**WUEST BROS., INC., Appellant,**

**v.**

**LIBERTY NATIONAL BANK & TRUST COMPANY, Appellee.**

Court of Appeals of Kentucky.

March 19, 1965.

Robert P. Hobson, Woodward, Hobson & Fulton, Louisville, for appellant.

William A. MacKenzie, William B. Peden, Jones, Ewen & MacKenzie, Louisville, for appellee.

STEWART, Judge.

In this case Wuest Bros. Inc. (herein called "Wuest"), sought to recover $19,-912.99 from Liberty National Bank & Trust Company (herein called "the bank") on seventeen forged checks. At the conclusion of all the evidence, a motion was made by Wuest for a directed verdict and, this motion being overruled, the case was submitted to the jury on the question of whether Wuest was negligent in examining the canceled checks returned to it and in failing to notify the bank of any of the forgeries. The jury found for the bank, and Wuest appeals.

Beginning with the date of December 19, 1958, Wuest's bookkeeper, Ben H. Williams, forged checks over a period of approximately eighteen months for the total amount of $23,282, the last check being dated June 2, 1960. All of these checks were drawn on Wuest's account in the bank.

The forgeries committed by Williams were done by his tracing onto Wuest's personalized business checks the signatures of persons duly empowered to sign checks on Wuest's account. For sixteen of these he copied the signature of G. E. Wuest and on one he copied the signature of W. D. Wuest. Both of these persons were authorized by Wuest to sign its checks.

After the first forgery on December 19, 1958, which was in the amount of $725 and which was the first of the forged checks received by the bank, the latter delivered to Wuest a monthly statement of Wuest Bros.' checking account. This statement showed the deduction from its account of the check of $725. At the same time, it delivered the canceled checks for the month of December, 1958, among which was this forged check.

The bank continued to deliver to Wuest on the first of each month the customary bank statements; and it returned all of the seventeen forged checks in due course with the respective monthly statements covering the months in which they were written and paid by it.

At no time during the eighteen-month period in which the series of forgeries occurred did Wuest notify the bank of any of the seventeen forgeries. It was only when one of the owners of Wuest died and an audit was made of the accounts of the company that the forgeries were discovered. Demand was made on the bank on July 18, 1960, to restore the amount in controversy to Wuest's account in the bank. Upon the refusal of the bank to make good the loss, this action was filed. At the trial it was stipulated Wuest had recovered $3369.01 from the forger, making its net loss $19,912.99.

Wuest complains there is no evidence the bank exercised any degree of ordinary care to determine whether the seventeen forged checks, or any of them, were genuine. The bank maintains a depositor is under a duty to his bank to examine canceled checks and statements received from the bank and to notify the bank promptly of any irregularities in the account; and, if a depositor disregards this duty, any further losses after the first forgery occurring as a result of such omission must be borne by the depositor unless the bank itself is guilty of contributory negligence.

The bank produced three experts in the banking field, other than its own officer who supervised the employees who handled the Wuest checks. These four witnesses compared the signatures on the forged checks with the genuine signatures of G. E. Wuest and W. D. Wuest written by them on the bank's signature card. They testified the forged signatures had been so skillfully traced on checks customarily used by Wuest in its business, and were so similar to signatures admitted to be authentic, that the forgeries could not be reasonably detected by the employees in the normal course of banking business. This evidence is undisputed.

■ Wuest contends this evidence should not have been admitted, because it was based upon an inspection of the checks four years after they were cashed. No authority is cited to sustain this assertion. Nevertheless, it appears to us an opinion as to the similarity of signatures, and as to whether the forgeries were so adept as to be undetectable by bank personnel, could be based upon an examination of the documents involved.

■ The trial court concluded, under the facts presented, that Wuest failed to establish a lack of ordinary care upon the part of the bank in paying all the checks. As we have noted, the jury was instructed to find for the bank if it determined Wuest was negligent in examining the bank statements and the canceled checks returned to it each month, in order to detect if any such checks were forged. However, the jury was directed to award Wuest the sum of $725, the first check forged, even if it found Wuest negligent. We are in accord with the trial court's disposition of this case.

The bank's defense is based upon the rule stated in 9 C.J.S. Banks and Banking § 356d(1), p. 743:

"Although there are authorities to the contrary, the weight of authority, and perhaps of reason, supports the view that, when a depositor's pass book has been written up and returned to him with the canceled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time and to report any forgeries or alterations which he has discovered, failing in which he cannot, if his failure has resulted in detriment to the bank, dispute the correctness of the payments shown, and the account as rendered becomes an account stated between the parties. * * *"

These principles are in harmony with those incorporated in KRS 355.4–406(1), (2) (a), (b) and (3) of the Uniform Commercial Code, which became effective July 1, 1960, and which now unquestionably determine the liability of a bank to a depositor in a forgery case like the one before us.

Wherefore, the judgment is affirmed.