**SIMCOE & ERIE GENERAL INSURANCE COMPANY and the Guarantee Company of North America, as subrogee of Simcoe & Erie General Insurance Company, Plaintiffs,**

v.

**CHEMICAL BANK, Defendant.**

**No. 88 Civ. 8822 (RWS).**

United States District Court, S.D. New York.

July 15, 1991.

**150**

Wilson Elser Moskowitz Edelman & Dicker, New York City, by William D. Hand, for plaintiffs.

Barbara E. Daniele, Vice President and Asst. Gen. Counsel, New York City, for Chemical Bank.

## OPINION

SWEET, District Judge.

Defendant Chemical Bank, New York Trust Company ("Chemical") has moved pursuant to Rule 56, Fed.R.Civ.P., for summary judgment dismissing the diversity action of plaintiffs Simcoe & Erie General Insurance Company ("Simcoe") and its subrogee, the Guarantee Insurance Company of North America ("Guarantee"). For the reasons set forth below, the motion is granted in part and denied in part.

*The Parties*

Simcoe is a Canadian corporation with its principal office in Hamilton, Ontario, Canada. Simcoe is a customer of Chemical.

Guarantee is a Canadian corporation with its principal office located in Willowdale, Ontario, Canada. Guarantee is Simcoe's insurer.

Chemical is a New York corporation engaged in the business of banking, with its principal offices located in New York City.

*Prior Proceedings*

Simcoe and Guarantee commenced this action on December 14, 1988. On February 10, 1989, Chemical served its answer raising several affirmative defenses including lack of complete diversity and the bar of certain of the claims in the complaint by the statute of limitations. On May 17, 1990, Chemical moved pursuant to Rules 11 and 37, Fed.R.Civ.P., to dismiss the complaint for Simcoe's and Guarantee's failure to obey the pre-trial scheduling orders. On May 21, 1990 the court dismissed the action *sua sponte* for failure to comply with the scheduling orders. In a letter of June 1, 1990, Simcoe and Guarantee asked the court to vacate the order of May 21. The court treated the letter as a motion pursuant to Rule 60, Fed.R.Civ.P., and scheduled oral argument. On June 27, the court issued an order vacating the default.

On February 8, 1991 Chemical filed the instant summary judgment motion. By consent of the parties, the return date of the motion was adjourned until March 29, 1991, when oral argument was heard. As Simcoe and Guarantee raised a legal argument that had not been briefed by the parties, counsel for both sides made additional submissions on that issue.

*The Facts*

This action arises from a check forgery scheme perpetrated by Lily Lee ("Lee"), Simcoe's employee, over the period March 14, 1985 through July 30, 1986.

Between March 1985 and August 1986, Simcoe maintained a checking account (the "operating account") with Chemical.

Simcoe hired Lee in January 1985. On January 3, 1985, Simcoe filed a Representative Card with Chemical. The card read, in pertinent part, as follows:

> Please cash any checks bearing my/our signature (or endorsement) when presented by my/our representative whose signature appears below.

> These instructions remain in effect until written revocation is received by you.

The card bore Lee's signature, identifying her as Simcoe's representative, and was issued in the name of and signed by Ray-

mond J. Morton ("Morton"), Simcoe's vice president-secretary and treasurer during the relevant period. The representative card remained effective until July 31, 1985.

On June 22, 1982, Simcoe had executed a resolution (the "Resolution") signed by Morton and Shang C. Lee, Simcoe's assistant treasurer and Lee's mother, that stated:

> that the Secretary or any Assistant Secretary ... is hereby authorized and directed to certify, ... to the Bank ... the names of the officers and other representatives of this Corporation ... and specimens of the respective signatures, and that the Bank may conclusively assume that persons at anytime certified it to be ... representatives of this Corporation continue as such until receipt by the Bank of written notice to the contrary.

Of the employees of Simcoe's New York office, Lee alone drew the checks, made all the entries in Simcoe's books, and reconciled the checks against the bank statements when they were returned by Chemical.

At the beginning of the forgery scheme, Lee would present the checks to the Chemical representative listing herself as payee and containing Morton's signature forged by Lee. After the checks were returned by Chemical, Lee would alter the payee of the check to reflect the names of legitimate companies with which Simcoe regularly did business. Lee also altered the voucher copies in Simcoe's ledgers. Later in the course of the scheme, Lee returned the checks to Simcoe's files leaving her name as payee.

After the forgery scheme was uncovered, Morton upon examining the checks was unable to discern which checks contained his signature and which were forgeries.

In 1985, Simcoe's actual expenses exceeded its budgeted expenses by $82,392. The amount of forged checks for 1985 totalled $95,704.

The Coopers & Lybrand audit of Simcoe's books during the period 1985–86 did not reveal the forgeries. During the relevant period Coopers & Lybrand did not perform a full audit for Simcoe, which would have included an audit of Simcoe's bank accounts.

Chemical sent Simcoe monthly statements of its operating account and returned to Simcoe the checks drawn on the account. The statement for the period March 6 through April 3, 1985 was received by Simcoe on April 11, 1985.

All Chemical statements bore the warning: "Please examine at once. Except for electronic transfers, account will be considered correct if no report is received within 14 days." Simcoe failed to notify Chemical within 14 days of April 11, 1985.

On July 30, 1986, upon checking the signatures on a check drawn on Simcoe's operating account, Chemical called Simcoe and asked Morton to verify his signature on the check. Simcoe & Erie first notified Chemical of the forgeries on August 13, 1986 based on the statement received for the period ending July 31, 1986.

Chemical refunded $862.59 to Simcoe. This amount represented the four forged checks paid by Chemical in March 1985 before Simcoe had an opportunity to review its first statement.

Guarantee paid Simcoe $109,585.76 ($152,202.54 Canadian dollars). In exchange for such payment, Simcoe assigned its claim to Guarantee, and fully released all rights it had against any party for compensation in connection with Lee's forgeries.

*Discussion*

I. Summary Judgment Standard

Summary judgment is authorized if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate only in the circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating the absence of any genuine issue as to all the

material facts, and the non-moving party is entitled to all favorable inferences that may be drawn from the evidence. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444–45 (2d Cir.1980).

## II. Duty to Discover Unauthorized Signatures

Section 4–406 of the Uniform Commercial Code, "Customer's Duty to Discover and Report Unauthorized Signature and Alteration," (McKinney's 1990) ("§ 4–406"), which both parties agree governs the instant dispute, provides, in pertinent part:

(1) When a bank sends to is customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer for any such unauthorized signature or alteration.

(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of an item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

Thus, if Chemical can establish, to the exclusion of any genuine issue of material fact, that Simcoe, either through its own negligence or through its failure to notify within the time prescribed by the statute, is precluded from asserting a claim against the bank with respect to each of the checks at issue, then Chemical should be granted summary judgment as a matter of law. If, however, Simcoe raises an issue of fact with respect to the above or with respect to Chemical's standard of care in paying the checks, then summary judgment will be denied.

### A. *Simcoe's Exercise of Due Care*

In support of its position that Simcoe failed to use due care in examining the returned checks for unauthorized signatures, Chemical points to Simcoe's failure to notify the bank of any unauthorized signatures within fourteen days of the receipt of the statement relating to the checks until its notification of Chemical on August 13, 1986.

The customer's duty to notify the bank within fourteen days is set forth in § 4–406(2)(b) of the statute as well as on each statement. Courts have upheld the failure to meet the fourteen day notification requirement imposed under § 4–406 as a basis for a grant of summary judgment in favor of the bank. *J. Sussman, Inc. v. Manufacturers Hanover Trust Co.*, 140 A.D.2d 668, 529 N.Y.S.2d 327 (2d Dep't 1988).

In addition to this undisputed failure to notify, Simcoe did not maintain vigilance over the accounts after the statements had

been returned. Simcoe neither detected Lee's tampering with the payee line of the checks to reflect legitimate vendors before placing them in the file nor her alteration of the voucher copies in its ledgers.

Simcoe also allowed the same person to be responsible for drawing the checks, keeping the books, and reconciling statements with the book entries. Chemical shows that such practices were not standard at Simcoe by adducing Morton's deposition testimony as well as a memorandum from E.H. Swindall ("Swindall"), Simcoe's chief financial officer, showing that immediately after the discoveries of the forgeries, headquarters in Canada directed the use of new procedures relating to the reconciliation of the account and the reporting of budget variances.

Simcoe and Guarantee for their part adduce no evidence showing Simcoe's exercise of due care in reviewing the checks in question, asserting merely that its use of due care is a question of fact. Chemical has therefore established to the exclusion of any question of fact that Simcoe failed to use due care to examine the statements and to discover any unauthorized signatures as required by § 4–406(1).

B. *Chemical's Exercise of Due Care*

1. Before the Expiration of the Authorization Card

Simcoe's representative card authorizing Lee to present checks for cashing bearing Morton's signature, which Chemical had on file, was in effect from January 1985 until its expiration on July 31, 1985.

Chemical adduces further evidence relevant to the period the representative card was in effect in support of its position that it was not negligent in failing to recognize that Morton's signatures as presented by Lee were forgeries. Morton's deposition testimony shows that a person exercising reasonable care could believe the signatures were Morton's, since even Morton could not later distinguish the checks he had signed from the forgeries.

In support of its position that Chemical was negligent in cashing the checks on which Morton's signatures were forged, Simcoe and Guarantee adduce testimony that cards bearing a sample of Morton's signature, as well as those of other officers of Simcoe, were on file at the branch at which the operating account was maintained, a few feet away from the teller. However no evidence has established that it is routine practice for tellers at Chemical, or at other banks, to pull the signature specimen from the file each time a check bearing that signature was presented.

2. After the Expiration of the Representative Card

■ With respect to the forgeries that occurred after the expiration of Lee's representative card on July 31, 1985, an issue of fact remains as to Chemical's negligence, where Chemical has adduced no evidence that establishes that it is customary for banks to cash checks presented by employees of customers after the expiration of the representative card. Morton's deposition testimony establishes that it is not Chemical's practice to require tellers ask for a representative card after the representative employee became familiar to the teller at the branch at which the account was maintained. Such evidence does not address directly the issue of the expired representative card.

C. *The March 6—April 3, 1985 Forgeries*

Given that Chemical has established to the preclusion of any genuine issue of material fact Simcoe's lack of due care, § 4–406 may preclude Simcoe's and Guarantee's claims as a matter of law. With respect to those checks forged from March 6 through April 3, 1985—the subject of the statement received by Simcoe on April 11, 1985—§ 4–406(2)(a) provides that Simcoe and Guarantee are precluded from asserting a claim if Chemical establishes Simcoe's lack of due care; its own exercise of due care; and that Chemical suffered a loss by reason of Simcoe's failure to exercise due care.

There is no dispute that Chemical reimbursed Simcoe in the amount of $862.59, the sum of the checks containing unautho-

rized signatures paid by Chemical from March 6 through April 3, 1985.

Based on the undisputed facts and on the lack of an issue of fact as to Simcoe's failure to use due care and as to Chemical's use of due care with respect to these checks, Simcoe is precluded under § 4–406(2)(a) from asserting a claim against Chemical based on the checks paid from March 6 through April 3, 1985. Therefore, summary judgment is granted dismissing those claims based on the checks forged during this period.

### D. *The Checks Presented from April 3, 1985—July 31, 1985*

Chemical's showing, to the preclusion of any genuine issue of material fact, that Simcoe failed to use ordinary care and promptness in examining the statements and that Chemical itself exercised ordinary care in cashing the checks as long as the representative card was in effect requires summary judgment, pursuant to § 4–406(2)(b), dismissing the claims based on forgeries subsequent to April, 1985, and up to and including July 31, 1985.

There is no dispute that (1) Chemical paid the checks in good faith;[1] (2) Simcoe received a statement on April 11, 1985; (3) Simcoe failed to notify Chemical of the unauthorized signatures within 14 days of the receipt of such statement.

Nor does Simcoe's and Guarantee's contention, in the face of a showing by Chemical to the contrary, that regardless of its own use of due care in examining the checks, Chemical failed to exercise due care in allowing them to be cashed require a contrary holding. *Sussman,* 140 A.D.2d at 668, 529 N.Y.S.2d at 327. In *Sussman,* the Appellate Division affirmed the trial court's grant of summary judgment in favor of the bank where plaintiff had failed to notify the bank within the fourteen days required pursuant to § 4–406 where the court found that the bank had exercised reasonable care. *Id.,* 529 N.Y.S.2d at 328.

Therefore, given Simcoe's undisputed failure to report unauthorized signatures within fourteen days, it is precluded from bringing any claims against Chemical based on checks paid subsequent to its receipt of the first statement relating to checks forged by Lee and up to and including the date of the expiration of the representative card. Therefore, summary judgment dismissing these claims is required as a matter of law.

### E. *The Checks Paid After July 31, 1985*

As stated above, a factual issue remains as to Chemical's exercise of due care with respect to those checks paid after the expiration of Lee's representative card. Chemical, however, argues in the alternative that the claims based on these checks are time barred.

#### 1. Applicable Statute of Limitations

The parties dispute the applicable statute of limitations governing the instant action. New York Civil Practice Law and Rules § 214 (McKinney's 1990) ("CPLR § 214" or "§ 214"), governing negligence claims, provides for a three-year limitations period. CPLR § 213 applies to actions for breach of contract and allows a six-year limitations period.

■ Chemical contends that, because Simcoe and Guarantee did not assert the application of the six-year statute until oral argument on the instant motion, Simcoe and Guarantee are therefore precluded from relying on the six-year rule. However, the complaint states a breach of contract claim sufficient to provide Chemical with notice of Simcoe's and Guarantee's theory of the action:

> As a result of [Chemical's] breach of its agreement with Simcoe & Erie and of its lack of ordinary care in paying said forged checks and in failing to discover that the purported signatures of those officers of Simcoe & Erie who were authorized to sign checks on the operating account were forgeries and in failing to recredit Simcoe & Erie's operating ac-

---

1. There is no dispute as to Chemical's good faith, defined in § 1–201 as "honesty in fact in the conduct or transaction concerned," in pay-

ing the checks, a matter distinct from Chemical's care or lack of care in making such payments.

count as aforesaid, plaintiff Simcoe & Erie has been damaged...." Complaint at ¶ 17.

■ Moreover, even if the complaint was defective in this respect, pleadings may be conformed to the proof presented, and parties are not necessarily bound by technical inaccuracies in their pleadings. *Moore v. Richmond Hill Savings Bank*, 117 A.D.2d 27, 502 N.Y.S.2d 202, 204 (2d Dep't 1986) (plaintiff in action based on bank's payment of forged checks not precluded from asserting conversion and breach of contract claims though such claims not specifically pleaded). *See Hechter v. New York Life Ins.*, 46 N.Y.2d 34, 38–39, 412 N.Y.S.2d 812, 814–815, 385 N.E.2d 551, 553–555, (1978) (enactment of UCC, including § 4–406, does not disturb plaintiff's right to elect a contract rather than a tort remedy). Therefore, the six-year period set forth in CPLR § 213 governs this action.

### 2. Accrual of the Claim

■ New York courts treating other actions based on a bank's payment of forged checks as breach of contract actions have held that such claims accrue upon the bank's payment of the check. *See Hechter*, 46 N.Y.2d 34, 36, 412 N.Y.S.2d 812, 813, 385 N.E.2d 551, 552; *American Home Assur. Co. v. Scarsdale Nat'l Bank & Trust Co.*, 96 Misc.2d 715, 409 N.Y.S.2d 608 (Westchester Cty. Ct., Special Term 1978).

Simcoe and Guarantee commenced this action on December 14, 1988. Therefore, under the six-year limitations period, any claims based on checks forged before December 14, 1982 would be time barred. There are no such claims, as the first forgery occurred in March, 1985. Therefore, of the claims about which there is still an issue of fact—*i.e.*, the forged checks paid after the expiration of the representative card that have not been dismissed pursuant to the grant of summary judgment based on § 4–406(2)(b)—none is time barred.

*Conclusion*

For the reasons set forth above, Chemical's motion for summary judgment is granted with respect to the checks paid before the expiration of the representative card on July 31, 1985. With respect to the claims based on checks paid after that date, the motion for summary judgment is denied.

It is so ordered.