**CONCRETE MATERIALS CORPORATION, Appellant/Cross–Appellee,**

v.

**BANK OF DANVILLE AND TRUST COMPANY, Appellee/Cross–Appellant.**

Nos. 95–SC–559–DG & 96–SC–171–DG.

Supreme Court of Kentucky.

Jan. 30, 1997.

James T. Gilbert, Coy, Gilbert & Gilbert, Richmond, for appellant/cross-appellee.

Merle C. Clark, Danville, for appellee/cross-appellant.

John T. McGarvey, M. Thurman Senn, Morgan & Pottinger, P.S.C., Louisville, for amicus curiae, Kentucky Bankers Association.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed a summary judgment by the circuit court which had limited Concrete Materials' claim against the Bank of Danville to twelve months preceding the discovery and notification that certain deposit tickets had been altered without authorization.

The issue involves claims against the bank by a corporate commercial customer in which it is argued that the conduct of the bank allowed the embezzlement of corporate funds by a corporate employee. The outcome of the case turned on application of KRS 355.4–406 entitled "Customer's Duty to Discover and Report Unauthorized Signature or Alteration." Subsection 4 provides that a banking customer is precluded from asserting a claim against a bank if the customer does not discover and report an "unauthorized signature or any alteration on the face or back of the item, ..." within one year of having the information before it with which to make such a discovery.

The point of controversy is whether the bank deposit slips qualify as the type of "item" covered by the statute. The trial judge held that the corporation was precluded from any recovery from the bank for any embezzlement which was more than one year old. The Court of Appeals, in a 2 to 1 decision, affirmed the judgment of the circuit court. Both parties sought review which this Court granted.

The underlying facts involve embezzlement by a plant manager who had the duty of depositing checks written to the corporation by its customers. The manager tendered a deposit slip to the bank listing each check and he received cash back in an amount equal to one of the checks. The bank teller stamped the deposit slip; however, the plant manager also had the teller stamp a blank duplicate deposit slip. The manager then took the blank deposit slip back to his office. He listed all of the checks which were actually deposited, but he did not list the check for which he received the cash. This practice went on for eight years. When the corporation finally became aware of it, an action was filed against the bank for negligence.

The bank defended in a number of ways. It argued that the UCC barred an action against the bank for any claim which was more than a year old when the claim was based on an "altered" item, and the bank had provided those items to its customers with the bank statements. The record indicates that although the unauthorized withdrawals were shown on deposit slips returned to the corporation by the bank each month during the eight-year period, apparently the deposit slips were not inspected and therefore the claimed unauthorized withdrawals went undetected and unreported until 1991.

Concrete Materials had its principal office in Richmond, Kentucky, but also conducted business at facilities in Danville, Lexington and Ravenna. The corporation had an account with the Bank of Danville, and only certain individuals were authorized to withdraw funds and sign drafts. The deposit agreement with the bank contained the following provision: "Statements—To minimize our mutual risk of loss, you must carefully examine your statements (or passbook entries) and report any errors, forgeries, unauthorized withdrawals or alterations to us as soon as possible, but in no event, later than sixty days after the statement is made available to you (or the passbook entries are made). If no report is made to us within such time, you waive your right to contest the payment of item so disclosed and you accept the charges assessed and account balances reported as correct."

The plant manager, who pled guilty to two misdemeanors, was not authorized to sign checks drawn on the company account, but he was permitted to cash checks sent to him by the home office for use as petty cash. These checks were payable to Concrete Materials Corporation, drawn on its account at a Richmond bank and cashed by the plant manager at the Bank of Danville.

Concrete's ultimate complaint against the bank claimed that from 1982 to 1990, the 547 unauthorized withdrawals amounted to $67,103.27 and were the result of the breach of contract by the bank to disburse money under proper order of Concrete, gross negligence and/or conversion.

Concrete Materials argues that they are entitled to a judgment against the Bank of Danville as a matter of law for the amount of the cash improperly given to the unauthorized employee. They also contend that KRS 355.4–406 is not a limitation on a bank customer's recovery because of the bank's action in permitting the customer's employee to receive cash from checks payable to the

customer and endorsed for deposit only. The customer claims that the provisions of the account agreement do not bar a claim against the bank for unauthorized withdrawals when the bank has failed to exercise ordinary care or has not acted in good faith. In response to the cross-appeal by the bank, Concrete Materials argues that the bank was aware that their employee had no authority to receive cash from customers' checks payable to Concrete Materials or to withdraw cash from the account.

The bank argues that the failure of Concrete Materials to examine its bank statements and to report claimed unauthorized withdrawals as required by the terms of the account agreement precluded it from asserting its alleged losses against the bank. They also assert that where Concrete Materials clothed its employee with actual and apparent authority to receive cash on checks drawn to Concrete Materials as payee, the company is estopped to deny the authority of the agent. Finally, the bank maintains that KRS 355.4–406(4) prevents the claim of unauthorized withdrawals disclosed in bank statements furnished to the customer where no report or notice was given to the bank during the eight-year period.

The failure of Concrete Materials to examine the bank statements and the failure to report the claimed unauthorized withdrawal disclosed therein, as required by the terms of the account agreement with the bank, precludes it from recovering its alleged losses against the bank. It is undisputed that even though the bank statements, original deposit slips and cancelled checks were mailed to the company office in Richmond each month, the company failed to examine the original deposit slips. Timely inspection of the bank statements and the other materials contained therein, would have disclosed the problem and prevented further losses. This is the precise reason for having a provision for inspection within sixty days in the bank statement.

■ KRS 355.4–406(4) limits the customer's opportunity for redress where bank statements have not been reviewed in a timely fashion without regard to the negligence of the bank or the failure to adhere to normal banking procedures. *See* Leibson & Nowka, *The Uniform Commercial Code of Kentucky* (2d Ed.) § 4.6(c).

The account agreement makes examination of bank statements in a timely fashion for any unauthorized withdrawals or alterations a condition precedent to suit and recovery. An extensive discussion of the nature of such account agreements is found in *Parent–Teacher Assn. v. Manufacturers Hanover Trust Co.*, 138 Misc.2d 289, 524 N.Y.S.2d 336 (N.Y. City Civ.Ct.1988). The court stated in pertinent part that the UCC permits parties to a contract of deposit to agree between themselves as to their duties and the legal consequences which flow therefrom. A contract of deposit may include conditions precedent or the equivalent of a shortened statute of limitations. However, the deposit agreement does not absolutely bar the depositor from suit and does not excuse liability in the future. The purpose of these agreements is to encourage investigation and preservation of evidence and as such are in accord with public policy by limiting disputes in an area where so many bank transactions occur every day. Similar principles are applied in *Retail Shoe Health Com'n v. Manufacturers Hanover Trust Co.*, 160 A.D.2d 47, 558 N.Y.S.2d 949 (1 Dept.1990). *See also Simcoe & Erie General Insurance Co. v. Chemical Bank*, 770 F.Supp. 149 (S.D.N.Y.1991). The official commentary to KRS 355.4–103(1) states that an account agreement is controlling unless it is manifestly unreasonable. A similar issue has been decided in *Jamison v. First Georgia Bank*, 193 Ga.App. 219, 387 S.E.2d 375 (1989).

■ Reliance by Concrete Materials on the argument that KRS 355.4–406(4) is inapplicable because a deposit slip cannot be considered an item is unconvincing. The fundamental purpose of KRS 355.4–406(4) is to place the burden of prompt and reasonable inspection of bank statements on the bank customer so that upon a discovery of an alteration or irregularity, the customer and the bank could be on the alert for future problems. The term "item" is defined in KRS 355.4–104(1)(g) as "Any instrument for the payment of money even though it is not negotiable ..." The deposit slip is a receipt

evidencing the fact that the bank has received a stated sum, and in some instances, may also be a vehicle for obtaining a cash withdrawal thereby coming within the general definition of the term "instrument" which is anything reduced to writing. *See Black's Law Dictionary* 801 (6th ed. 1990). The deposit slip is evidence of the deposit transaction and consequently the altered deposit slips are "items" for the purposes of KRS 355.4–406. In this case the practice of alteration occurred for eight years and even a brief examination of the bank statements would have disclosed that there was a problem with unauthorized withdrawals. It appears that corporate headquarters used only the duplication deposit slips in conducting their audits, even though the bank had sent the original deposit slips along with the statements.

*J.W. Reynolds Lumber Co. v. Smackover State Bank,* 310 Ark. 342, 836 S.W.2d 853 (1992), involves a very similar situation where an embezzlement by a bookkeeper went undetected for a number of years because of the failure of the management to examine deposit slips when auditing the company bank statements. In deciding the case in favor of the bank under theories of laches and estoppel, the Arkansas court indicated that the enactment of UCC 4–406 was inapplicable only because the original deposit slips had not been returned to the customer. *See Hawkland Uniform Commercial Code Series* § 4–406, Cumulative Supplement N. 60. In our view, the definition of item is broad enough to include deposit slips, and therefore we find KRS 355.4–406 applicable in this case.

In regard to the duty of a customer to examine their bank statements in a prompt and reasonable fashion, see *Knight Communications, Inc. v. Boatmen's National Bank of St. Louis,* 805 S.W.2d 199 (Mo.App.1991).

In reaching our decision as to the absolute prohibition provided by KRS 355.4–406(4) to those claims that are more than a year old, we have carefully examined the numerous legal authorities presented by Concrete Materials and found them unconvincing. In particular, we will note that *Bullitt County Bank v. Publishers Printing,* Ky.App., 684 S.W.2d 289 (1984), is inapplicable and distinguishable. That case did not involve unauthorized withdrawals under Subsection 4–406, nor an account agreement, but rather the situation of a trusted employee who used properly signed blank checks and made those checks payable to the depository bank and obtained in exchange for them checks payable to another bank and deposited into his own account there. The court in *Bullitt County Bank, supra,* specifically stated that the issue was to determine the standard of care to be exercised by the bank when handling checks drawn to its order by a drawer not indebted to that bank, and to establish the effect of alleged negligence on the part of the drawer in its handling of those checks prior to their tender to the bank.

*USACO Coal Company v. Liberty Nat'l Bank and Trust Co. of Louisville,* Ky.App., 700 S.W.2d 69 (1985), has no application in this case. The holding of that case was that the payment from a collateral source was not a truly collateral source and therefore the case was remanded for determination on the question of whether the depository contract was breached. The remaining cases from foreign jurisdictions cited by the Concrete Materials are found inapplicable and unpersuasive.

In regard to the necessity of a bank customer to be diligent in examining bank statements, we find that *Wuest Brothers, Inc. v. Liberty Nat'l Bank & Trust Co.,* Ky., 388 S.W.2d 364 (1965) was decided under principles of law in effect prior to the effective date of the UCC in Kentucky. The Court of Appeals affirmed the trial court in applying the principle that no recovery could be obtained by a customer if the customer was negligent in examining the bank statements and cancelled checks. The claim reviewed in *Wuest Brothers, supra,* related to unauthorized withdrawals which took place prior to the effective date of the current UCC. *Wuest Brothers* involved a bank customer's bookkeeper who forged checks in 1958 and continued for a period of eighteen months for a total of $23,282.

Although there are no reported Kentucky cases specifically applying § 4–406(4), there are many authorities from other jurisdic-

tions. Clark, *The Law of Bank Deposits*, § 802(4)(d)8–44 states that a customer cannot demand that his account be recredited if he does not report a forgery or alteration within one year from the time he receives the statement and items. This time limit is a "substantive bar that destroys the right to sue the bank, regardless of the theory on which the plaintiff brings suit." Anderson, *Uniform Commercial Code*, Vol. 6 § 4–406:15 at 206.

Cases from other jurisdictions uniformly hold that § 4–406 requires dismissal of those claims relating to alterations or unauthorized withdrawals where the plaintiff failed to discover and report them within one year after receiving the bank statements and related items.

New York has held in *Touro College v. Bank Leumi Trust Co. of New York*, 186 A.D.2d 425, 589 N.Y.S.2d 314 (1 Dept.1992), that the UCC mandates dismissal of those causes of action pertaining to altered items which the plaintiff failed to discover and report within one year after receiving the bank statements and items. Michigan reached a similar result in *King of All Mfg., Inc. v. Genesee Merchants Bank & Trust Co.*, 69 Mich.App. 490, 245 N.W.2d 104 (1976).

Florida reached the same conclusion in *Space Distributors, Inc. v. Flagship Bank of Melbourne, N.A.*, 402 So.2d 586 (Fla.App. 1981), even though no account agreement was involved in that case and there was no indication that the employee was given actual authority to cash checks payable to the company.

Arkansas stated that a depositor is not excused from his responsibility to examine the statements of the bank within a reasonable time and to inform the bank of any errors. *Pine Bluff Nat'l Bank v. Kesterson*, 257 Ark. 813, 520 S.W.2d 253 (1975).

Tennessee held that the effect of the code is to charge the depositor with the knowledge of all facts that a reasonable person could learn from examination of the bank statement and cancelled checks. *Vending Chattanooga Inc. v. American Nat'l Bank & Trust*, 730 S.W.2d 624 (Tenn.1987).

The term "item" has been broadly defined and the official comment on the term item treats it as "banking language." The broad definition is endorsed in *Houston Contracting Co. v. Chase Manhattan Bank*, 539 F.Supp. 247 (S.D.N.Y.1982), so as to include a deposit slip.

■ In regard to the cross-appeal by the bank, the failure of Concrete Materials to notify it of any discrepancy within 60 days of receipt of the statement as required by the account agreement, bars recovery for claims within one year not otherwise barred by the statute. The failure of the customer to adhere to the terms of the account agreement is a defense that may be raised to counter the claims of breach of contract, negligence and conversion by Concrete Materials. There are genuine issues of material fact that require proof of facts which cannot be properly disposed of by summary judgment. We agree with the circuit judge and Court of Appeals that a jury question is presented and we affirm the decision of the Court of Appeals to remand this case as to those claims not barred by the one year statute. *Cf. Steelvest, Inc. v. Scansteel Service Center*, Ky., 807 S.W.2d 476 (1991) and CR 56.03.

■ The Bank of Danville raises the issue of whether Concrete Materials is estopped to deny the authority of the agent when they clothed their employee with actual and apparent authority to receive cash or checks drawn on the Concrete Materials Corporation as payee. There is evidence in the record that certain checks were issued by the company and sent to the plant manager in Danville for him to cash and use as petty cash. The plant manager's uncontroverted testimony indicated that this had been a practice of long standing and was followed when the company had an account at another Danville bank. There was evidence that a previous manager at the Danville plant indicated that it was custom and practice to receive back cash from deposits and that the practice was known and authorized by company officials. We do not accept this argument.

■ As noted in *Crump v. Sabath*, 261 Ky. 652, 88 S.W.2d 665 (1935), agency continues

to be a question of fact to be determined from the circumstances and the conduct of the parties. Summary judgment on such a question is improper because it is a material question of fact as to whether any agency existed. In a case involving the validity of a mechanics' lien, this Court again determined that the existence of agency is a question of fact for the jury. *Middletown Engineering Co. v. Main Street Realty, Inc.*, Ky., 839 S.W.2d 274 (1992). Upon trial of this matter as to those claims not barred by the one-year statute, the parties and court should be mindful of these requirements.

It is the holding of this Court that the Court of Appeals and the circuit court correctly determined that the failure of Concrete Materials to inspect its bank statement and to notify the bank of the claimed unauthorized withdrawals within one year of the time the statements and items were made available to it, precludes any claim for such unauthorized withdrawals. The questions relating to the alleged unauthorized withdrawals within the one year period of time are remanded to the circuit court for a trial on the merits.

The decision of the Court of Appeals is affirmed.

STEPHENS, C.J., and COOPER, LAMBERT and STUMBO, JJ., concur.

GRAVES, J., dissents by separate opinion.

JOHNSTONE, J., not sitting.

GRAVES, Justice, dissenting.

Respectfully, I dissent for the same reasons given by Judge Wilhoit in his Court of Appeals opinion.

A deposit slip is not an "item" as contemplated in KRS 355.4–406(4). A deposit slip is no more than a receipt evidencing that the bank has received a sum of money. Under KRS 355.4–406 the depositor's only duty is to examine for unauthorized signatures and alteration of items and so notify the bank. The alteration in this case was not made on the operative deposit slip but on a bogus duplicate deposit slip.