**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10562
Non-Argument Calendar
_____

DARIN MATHEWS,
   individually and on behalf of all others similarly situated,
RONALD REEVES,
   individually and on behalf of all others similarly situated,

                                                      *Plaintiffs-Appellants,*

*versus*

HOME DEPOT USA, INC.,

                                                      *Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-02605-ELR
_____

Before ROSENBAUM, NEWSOM, and ABUDU, Circuit Judges.

PER CURIAM:

Plaintiffs Darin Mathews and Ronald Reeves filed a putative class action lawsuit against Home Depot USA, Inc., alleging that Home Depot overcharged them and numerous others for short-term tool rentals, in breach of the rental agreement. The district court granted summary judgment for Home Depot, after concluding that Plaintiffs had waived their disputes by failing to comply with a provision requiring written notice to Home Depot within 25 days of any disputed charges. Because the notice provision states a condition precedent with which Plaintiffs failed to comply, and the provision is not otherwise unconscionable or unenforceable under state contract law, we affirm the district court.

## I. Background

This case is about fees Home Depot charged for tool rentals. Plaintiffs alleged that Home Depot violated two sections of its standard tool rental agreement by systematically overcharging customers for additional rental fees and damage protection fees when a customer retained a tool for longer than the initial rental period.

### A. Additional Rental Fees

Reeves's allegations relate to additional rental fees. On August 7, 2021, Reeves rented a jackhammer from Home Depot for one day, for an estimated rental fee of $119, and paid a deposit of $350. Reeves returned the tool, on August 19, 2021, 11 days late, and was charged $952 in total rental fees, or double the weekly charge of $476. Home Depot generally charges different rates based on the length of the rental period.

In paying for the tool, Reeves signed, using an electronic PIN pad, an agreement stating in part, "If I do not return this equipment by the scheduled end date, I agree to a weekly recurring charge of $476.00, until all tools have been returned." After he paid, he received a five-page rental agreement, which provided that "if the Equipment is not returned prior to expiration of the Rental Period, Renter will be charged an additional rental fee in the amount identified on Page 1 on a daily recurring basis ('Additional Rental Fees')" until the equipment is returned. It appears the PIN agreement constitutes "Page 1" of the overall rental agreement.

Plaintiffs maintain that the "weekly recurring charge of $476.00," as charged "on a daily recurring basis," amounted to $68 per day, and that Home Depot overcharged Reeves for two weeks, instead of 12 days, through its billing methodology.

B.  *Damage Protection Fees*

Mathews's allegations implicate both additional rental fees and damage-protection fees. On July 17, 2021, Mathews rented a drain camera from Home Depot for four hours, for an estimated rental fee of $139, and paid a deposit of $500. He agreed to optional damage-protection coverage, with an estimated cost of $20.85, or 15% of the rental fee. The camera quickly got stuck in his drain, which damaged the camera and delayed its return. When Mathews returned the tool on July 21, 2021, for a total rental period of four days, he was charged $796 in total rental fees (representing the weekly rental fee), and $45.90 for damage-protection fees (15% of the new rental charge). Home Depot also charged Mathews for

4                    Opinion of the Court                    25-10562

damage to the drain camera, notwithstanding the damage-protection coverage.

Like Reeves, Mathews received a five-page rental agreement after he had paid for the tool rental and signed the electronic PIN pad. The agreement provides that the "charge for Damage Protection is 15% of the Rental Price." The agreement defines "Rental Price" as "the rental subtotal price identified on Page 1" of the agreement. Plaintiffs contend that the definition of "Rental Price" does not include "Additional Rental Fees" under the terms of the agreement, such that no additional damage-protection fess were authorized.

C. *Notice Provision*

The second paragraph of the five-page rental agreement set out various rules governing the terms and conditions of payment:

> 2.      PAYMENT.    Renter is responsible for all charges due in full at the commencement of the Rental Period or upon The Home Depot's request, using a payment card approved by The Home Deport ("Renter Card") . . . .  Renter consents to the reservation of credit for estimated charges due, and authorizes The Home Depot to process all amounts due, on Renter Card . . . .  All charges are subject to audit, and either party will promptly pay to or credit the other party for any necessary adjustments or corrections to charges as a result [of] the audit.  *Renter must notify The Home Depot in writing of any disputed amounts, including*

*credit card charges, within twenty-five (25) days after the receipt of The Home Depot rental contract/invoice, or Renter will be deemed to have irrevocably waived its right to dispute such amounts.* Renter will also pay all direct costs of collection, including attorney fees, and interest at the highest rate permitted by law on any past-due amounts.

We refer to the emphasized portion of this paragraph, which is not italicized in the original agreement, as the "notice provision."

Neither Reeves nor Mathews provided Home Depot with written notice of their disputed charges. But they did orally dispute their charges through various calls and conversations with Home Depot employees and customer-service representatives.

## II.  Procedural History

Mathews and Reeves filed a putative class action complaint in June 2022 and the operative second amended complaint in March 2023. They alleged that Home Depot breached the rental contract by overcharging them for additional rental fees and damage-protection fees, among other claims. The district court determined that these counts stated plausible claims for breach of contract.

After the close of discovery, Plaintiffs moved for class certification and for partial summary judgment. For its part, Home Depot moved for summary judgment in full and moved to exclude expert testimony.

The district court granted summary judgment to Home Depot, concluding that Plaintiffs' claims were barred because they failed to comply with the rental agreement's 25-day written notice provision, which was a condition precedent to Home Depot's liability. The court rejected Plaintiffs' arguments that the notice provision (1) applied only in the event of an optional "audit"; (2) was an unenforceable exculpatory clause; (3) was too vague as to where and when to dispute a charge; and (4) was procedurally and substantively unconscionable. Concluding that Plaintiffs' claims were barred by the notice provision as a matter of law, the court granted Home Depot's motion for summary judgment and dismissed the remaining motions as moot. Plaintiffs now appeal.

## III. Discussion

We review de novo a district court's grant of summary judgment. *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1163 (11th Cir. 2017). We also review de novo the court's interpretation of contract language. *Id.* at 1164.

Contract interpretation is about determining the "intention of the parties." O.C.G.A. § 13-2-3. To ascertain that intention, we give the language "its literal meaning and plain ordinary words . . . their usual significance." *Grange Mut. Cas. Co. v. Woodard*, 861 F.3d 1224, 1231 (11th Cir. 2017) (quotation marks omitted). "If contract language is clear and unambiguous, we look only to that language to ascertain the parties' intention." *Georgia-Pacific Corp. v. Liberam*, 959 F.2d 901, 905 (11th Cir. 1992). "A contract is unambiguous when, after examining the contract as a whole and affording its

words their plain meaning, the contract is capable of only one reasonable interpretation." *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019). But if "the contract contains provisions susceptible of more than one reasonable interpretation," it is ambiguous. *Id.* (quotation marks omitted). "Ambiguities are construed against the contract's drafter." *Woodard*, 861 F.3d at 1231.

Moreover, there is no dispute that the rental agreement at issue constitutes an "adhesion contract." An adhesion contract is "a standardized contract offered on a 'take it or leave it' basis and under such conditions that a consumer cannot obtain the desired product or service except by acquiescing in the form contract." *Walter Elec. Membership Corp. v. Snyder*, 487 S.E.3d 2d 613, 617 n.6 (Ga. Ct. App. 1997). Such contracts are "permissible" but "construed strictly against the drafter." *Id.*; *Realty Lenders, Inc. v. Levine*, 649 S.E.2d 333, 336 (Ga. Ct. App. 2007) ("[T]he fact that a contract is adhesive does not, standing alone, render the contract unenforceable.").

### A. The notice provision states a condition precedent.

Plaintiffs first argue that the notice provision does not establish a condition precedent to liability for any disputed amounts, and instead applies only to an optional audit process. They maintain that this construction is reasonable because the notice provision is immediately preceded by a statement regarding adjustments or corrections to charges as a result of an audit process.

"A condition precedent is one which must be performed before any right to be created thereby accrues. It requires performance by one party before performance by the other." *Wolverine Ins. Co. v. Sorrough*, 177 S.E.2d 819, 822 (Ga. Ct. App. 1970). Conditions are generally "not favored in interpreting contracts," but they can be "created by language such as 'on condition that,' 'if,' and 'provided,' or by explicit statements that certain events are to be construed as conditions precedent." *Hall v. Ross*, 616 S.E.2d 145, 147 (Ga. Ct. App. 2005). If a contract's clear and unambiguous terms "do not clearly establish a condition precedent, we cannot construe the contract to create one." *Choate Constr. Co., Inc. v. Ideal Elec. Contractors, Inc.*, 541 S.E.2d 435, 438 (Ga. Ct. App. 2000).

"Where a contract contains provisions requiring written notice of a claim for breach, the failure to give notice as required or to show waiver by the party entitled to notice is an independent bar to the maintenance of a successful cause of action on the contract." *Pillar Dev., Inc. v. Fuqua Constr. Co., Inc.*, 645 S.E.2d 64, 66 (Ga. Ct. App. 2007). And "oral notice is not sufficient where written notice is required." *Id.*

We agree with the district court that the notice provision unambiguously stated a condition precedent to an action for recovery of disputed rental charges. While the provision does not use terms like "'on condition that,' 'if,' and 'provided,'" *Hall*, 616 S.E.2d at 147, the language it does use is no less conditional. As the court noted, the provision states that the renter "must" provide notice "in writing of any disputed amounts, including credit card

charges," within 25 days of the "rental contract/invoice," "or Renter will be deemed to have irrevocably waived its right to dispute such amounts." In other words, *if* written notice of any disputed amount is not provided within 25 days, *then* the renter waives the right to dispute such amounts. Thus, the provision states a condition—written notice—that "must be performed" "before performance of the other." *Wolverine Ins.*, 177 S.E.2d at 822.

We disagree with Plaintiffs that the notice provision can be reasonably construed to apply only to audit charges. As the district court noted, the 25-Day notice provision unambiguously applies to "*any* disputed amounts, including credit card charges." "Read naturally, the word 'any' has an expansive meaning" referring "to all of the subject that it is describing." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1223 (11th Cir. 2001) (quotation marks omitted); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) ("[T]he adjective 'any' is not ambiguous; it has a well-established meaning."). So the plain language of the notice provision naturally refers to *all* disputed charges, not just a subset of disputed charges "after audit," as Plaintiffs suggest.

Nor does the surrounding context support reading the notice provision as limited to audit charges only. To be sure, the notice provision is preceded by a sentence about all charges being subject to audit. But the paragraph as a whole is not specific to the audit process. Rather, paragraph 2 outlines the general terms and conditions of "payment," and nothing in the remainder of the paragraph, notice provision included, mentions an "audit."

Plaintiffs' contention that this interpretation renders other provisions in the policy superfluous misses the mark. *See Garrett v. S. Health Corp. of Ellijay, Inc.*, 739 S.E.2d 661, 667–68 (Ga. Ct. App. 2013) (explaining courts "should avoid an interpretation of a contract which renders any of its terms meaningless or mere surplusage"). Plaintiffs point to subparagraphs 8(b) and (c), which address Home Depot's remedies for customer default, including recovery of "all costs incurred" plus "reasonable attorney's fees" if Home Depot acts to secure return of the tool or reimbursement. They note that, under the district court's interpretation, paragraph 2 already allows recovery of collection costs and attorney's fees.

To the extent these provisions overlap, however, they are not inconsistent, and some redundancy is not unusual in discussing both the customer's payment obligations (as in paragraph 2) and Home Depot's remedies (as in subparagraphs 8(c) and (d)). *Cf. Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (observing that "redundancy is 'hardly unusual' in statutes addressing costs"). Plus, avoiding any redundancy along these lines would require contradicting the plain meaning of "any," as we explained above. *See id.* ("[T]he canon against surplusage assists only where a competing interpretation gives effect to every clause and word of a statute.") (quotation marks omitted).

Finally, Plaintiffs contend that the district court's interpretation of the notice provision is inconsistent with subparagraph 8(d), which provides that, if Home Depot "fail[s] to meet any of its obligations under this Agreement, Renter's only remedy is repair or

replacement of the Equipment or a rental charge adjustment at The Home Depot's sole discretion." But it's not clear how this general-remedies provision contradicts or introduces ambiguity into the specific language of the notice provision. *See, e.g.*, *Tower Projects v. Marquis Tower*, 598 S.E.2d 883, 885 (Ga. Ct. App. 2004) ("When a provision specifically addresses the issue in question, it prevails over any conflicting general language."). And the mere fact that Home Depot could have taken steps to make the written-notice requirement more prominent does not somehow make the notice provision ambiguous.

For these reasons, the district court correctly concluded that the notice provision states a condition precedent to Home Depot's liability for disputed charges. It's also undisputed that Plaintiffs did not comply with that provision by providing written notice within 25 days. So even if Plaintiffs established that oral notice had been given, it would not satisfy the written notice requirement. *See Pillar Dev.*, 645 S.E.2d at 66 ("[O]ral notice is not sufficient where written notice is required.").

### B. *Plaintiffs have not established unconscionability.*

Next, Plaintiffs contend that, if the notice provision states a condition precedent, it is both procedurally and substantively un-conscionable.

The Georgia Supreme Court has defined "an unconsciona-ble contract as one that no sane man not acting under a delusion would make and that no honest man would take advantage of, one that is abhorrent to good morals and conscience, and one where

one of the parties takes a fraudulent advantage of another." *Innovative Images, LLC v. Summerville*, 848 S.E.2d 75, 83 (Ga. 2020). We have observed that "[t]he unconscionability standard is hard to satisfy under Georgia law." *Payne v. Savannah Coll. of Art & Design*, 81 F.4th 1187, 1194 (11th Cir. 2023).

Unconscionability implicates both "procedural and substantive elements." *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 771 (Ga. 1996). Thus, unconscionability is examined "from the perspective of substantive unconscionability, which looks to the contractual terms themselves, and procedural unconscionability, which considers the process of making the contract." *Innovative Images*, 848 S.E.2d at 83 (quotation marks omitted). In examining procedural unconscionability, courts look to factors such as "age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *NEC Techs.*, 478 S.E.2d at 771–72. As to substantive unconscionability, relevant factors include "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id.*

Here, we agree with the district court that Plaintiffs have not shown that the rental agreement was substantively unconscionable. Plaintiffs dispute whether the 25-day notice provision is commercially reasonable, noting that it may set a trap for unwary consumers and one-sidedly "appl[ies] only to consumers." "But an

agreement is not unconscionable merely because it appears to favor one party over another or may lead to hardship." *Smith v. Adventure Air Sports Kennesaw*, 849 S.E.2d 738, 744 (Ga. Ct. App. 2020). That the agreement places a notice requirement solely on the consumer is neither conscience-shocking nor particularly surprising. The rental agreement governs short-term tool rentals by consumers, for terms starting at four hours, under circumstances that may result in damage to the tool. It's not unreasonable to require the customer to notify the company of any disputed charges because the customer would have first-hand knowledge of the dates of rental or any damages. And the 25-day notice period, while short, ensures that Home Depot has an opportunity to investigate and resolve disputes while the underlying facts are fresh.

Plaintiffs assert that "no Georgia appellate court has ever enforced a contract provision which required notice within 25 days of a breach or a party loses the right to sue," particularly in the consumer context. But the absence of case law on this point does not necessarily help Plaintiffs because Plaintiffs have not identified any case going the other way, either. And our own review suggests that the 25-day notice period, while perhaps cutting it close, is not commercially unreasonable.

In *Freese v. Regions Bank, N.A.*, 644 S.E.2d 549, 552 (Ga. Ct. App. 2007), for example, the Georgia Court of Appeals enforced a notice provision in a deposit account agreement that required customers to notify the bank in writing of any unauthorized charges

within 30 days of the statement, or the statement "shall be conclusively deemed to be correct." *Id.* at 550. The court indicated that such a notice provision should *not* be viewed as a disclaimer of liability or a limitation of damages because "the bank can be held liable for any failure to exercise due care" if the customer provides timely notice. *Id.* at 551 (quoting *Am. Airlines Emps. Fed. Cred. Union v. Martin*, 29 S.W.3d 86 (Tex. 2000)). The court also noted that the purpose of such notice provisions was "to encourage investigation and preservation of evidence," thereby "limiting disputes in an area where so many bank transactions occur every day." *Id.* at 552 (quoting *Concrete Materials Corp v. Bank of Danville & Trust Co.*, 938 S.W.2d 254 (Ky. 1997)). Thus, the court held that the 30-day notice period was not "manifestly unreasonable" and was "enforceable," and that the bank could not be charged with liability after the 30-day period. *Id.*

*Freese*'s reasoning is also consistent with the Georgia Supreme Court's recent decision in *Omstead v. BPG Inspection, LLC*, 903 S.E.2d 7 (Ga. 2024). *Omstead* held that a one-year contractual limitations period was not an "exculpatory clause" because it "did not purport to relieve or release [the drafter] from liability" and otherwise "permitted suit" within the time specified. *Id.* at 12–13. Accordingly, *Freese* supports the reasonableness of the 25-day notice period in this case.[1]

---

[1] Although the Plaintiffs address *Freese* in relation to whether the notice provision stated a condition precedent, they fail to discuss its relevance, or any lack thereof, regarding the reasonableness of the 25-day notice period.

Plaintiffs also argue that the notice period was too short because the rental agreement had an "opaque charging methodology" and wasn't provided until after payment. But the provision at issue required a consumer to provide written notice of a disputed charge, not to file a claim or lawsuit within that time. And the record here suggests that Plaintiffs were not prevented from raising disputes about the charges within the 25-day time period.[2] Plaintiffs also had time to review the rental agreement days or weeks before they received the invoice reflecting their final charges, which started the 25-day notice period.

As to the procedural elements of unconscionability, which the district court did not reach, Plaintiffs have not shown that the process of making the contract was equivalent to one in which "one party takes a fraudulent advantage of another."[3] *Innovative*

---

[2] In a passing footnote about procedural unconscionability, Plaintiffs observe that the notice provision fails to say "where to send written notice," and otherwise provides a telephone number to address issues with Home Depot. But they fail to develop this argument or to address the district court's reasons for rejecting it below, so this issue has not been properly raised for appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("A party fails to adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims.") (quotation marks omitted).

[3] Plaintiffs maintain that the district court erred in requiring some degree of substantive unconscionability because, in their view, procedural unconscionability alone is enough to invalidate a provision. *But see NEC Techs., Inc. v. Nelson*, 478 S.E.2d 771, 773 n.6 (Ga. 1996) (agreeing with the statement that most courts "require a certain quantum of procedural plus a certain quantum

*Images*, 848 S.E.2d at 83.  It's not enough that the agreement was a take-it-or-leave-it adhesion contract involving parties of unequal bargaining power.  *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1265 (11th Cir. 2017) ("[U]nder Georgia law, an adhesion contract is not per se unconscionable.") (quotation marks omitted); *see Levine*, 649 S.E.2d at 336 ("[T]he fact that a contract is adhesive does not, standing alone, render the contract unenforceable.").

Moreover, the notice provision in this case "was written in clear, comprehensible terms and in readable type."  *Jones*, 866 F.3d at 1266.  The provision was on the first page of the five-page agreement, in the second paragraph, which outlined the terms of the consumer's payment obligations, and it unambiguously applied to "any disputed amounts, including credit card charges."  While the notice provision could have been set out more conspicuously, it was not hidden or buried in the agreement.  *See Mullis v. Speight Seed Farms, Inc.*, 505 S.E.2d 818, 820–81 (Ga. Ct. App. 1998) ("'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.").

We are not persuaded that Plaintiffs' receipt of the five-page agreement after they had signed and paid makes the agreement procedurally unconscionable, alone or in combination with other

---

of substantive unconscionability").  We need not resolve that question because the notice provision was not procedurally unconscionable.

factors. Notably, Plaintiffs do not raise an issue of contract formation. And Georgia courts routinely enforce provisions requiring notice as a condition precedent. *See, e.g.*, *Freese*, 644 S.E.2d at 552.

Nor can we say that this case is like *Chrysler v. Wilson Plumbing*, 208 S.E.2d 321 (Ga. Ct. App. 1974), or *Mullis*, 505 S.E.2d 818. In *Chrysler*, the court found that it would be unconscionable to bind a car purchaser to a disclaimer of implied warranties, when that disclaimer was delivered "after he was obligated to purchase the automobile" and purported to disclaim the "warranty implied by law from the dealer" under the purchase document. 208 S.E.2d at 324–25. Similarly, in *Mullis*, the court held that it would be unconscionable to bind a purchaser of crop seed to disclaimer-of-warranty and limitation-of-remedies provisions, which limited the seller's liability for breach of warranty to the purchase price, when the purchaser was not made aware of the provisions until after purchase, and the provisions unreasonably shifted the allocation of risk to the purchaser. 505 S.E.2d at 820–21.

*Chrysler* and *Mullis* arise from substantially different factual contexts, involving a car purchase or the purchase of crop seed, respectively. But more importantly, they involve warranty disclaimers and limitation-of-remedy provisions, not procedural notice requirements, as in this case. And the warranty disclaimers negated a part of what the buyers had bargained for. That's not so with a procedural notice provision. To be sure, Plaintiffs maintain that the notice provision operates just like these provisions, by cutting off liability after 25 days. But Georgia law treats notice provisions

differently. Similar to the 30-day notice provision in *Freese*, the notice provision here is not properly viewed as a disclaimer of liability or a limitation on damages because Home Depot can be held liable for any breach if the customer provides timely notice.[4] *See* 644 S.E.2d at 551; *see also Omstead*, 903 S.E.2d at 12–13. Rather, as we explained above, the notice provision states a condition precedent to Home Depot's liability for "any disputed amounts, including credit card charges."

## IV.

In sum, we conclude that the 25-day notice provision in the rental agreement stated a condition precedent and that Plaintiffs have not shown that the provision is unconscionable or otherwise unenforceable. Because it's undisputed that Plaintiffs did not provide timely, written notice of their disputes, it follows that Plaintiffs have "waived [their] right to dispute such amounts" by maintain this action. We affirm the judgment in favor of Home Depot.

**AFFIRMED.**

---

[4] For similar reasons, we reject Plaintiffs' argument that the notice provision should be viewed as an "exculpatory clause" that was required to be "explicit, prominent, clear and unambiguous." *Imaging Systems Int'l, Inc. v. Magnetic Resonance Plus, Inc.*, 227 Ga. App. 641, 644-45 (1997) ("Provisions severely restricting remedies act as exculpatory clauses and therefore should be explicit, prominent, clear and unambiguous.") (quotation marks omitted). Plaintiffs do not identify any support for that construction apart from a concurring opinion in *Omstead v. BPG Inspection, LLC*, 903 S.E.2d 7 (Ga. 2024), which otherwise held that a one-year contractual limitations period was *not* an exculpatory clause, *id*. at 12–13. We decline to break new ground in these circumstances.