NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 11, 2024

S23G0771. OMSTEAD v. BPG INSPECTION, LLC et al.

MCMILLIAN, Justice.

In early 2020, Albert Omstead and BPG Inspection, LLC, a home inspection company, entered into a contract setting out the terms for an inspection of a home and property that he and his wife, Jessique Omstead, desired to purchase. One of the agreed-upon terms was a one-year limitation providing that Mr. Omstead could not sue BPG Inspection or its employees after one year from the inspection. After the inspection was performed, the Omsteads purchased the home. More than a year later, Mr. Omstead died after a retaining wall at his home collapsed on him. Mrs. Omstead then filed a wrongful death suit against BPG Inspection and one of its inspectors, James Golden (collectively, "BPG").[1] The trial court

_____

[1] From here on, we refer to Jessique Omstead as "Omstead" or "Mrs. Omstead," and to her deceased husband Albert Omstead as "Mr. Omstead."

determined on the cross-motions for summary judgment that for various reasons, the one-year limitation was unenforceable, but the Court of Appeals reversed. We granted review to consider whether the Court of Appeals erred in approving the one-year limitation and whether the limitation is void as against public policy. We conclude that the one-year limitation is enforceable and that the provision is not void as against public policy. Accordingly, we affirm.[2]

1. We review the legal issues raised in a grant or denial of a motion for summary judgment de novo. See *City of Winder v. Barrow County*, ___ Ga. ___ (1) (899 SE2d 157) (2024) (2024 WL 923102, 2024 Ga. LEXIS 67); *Toyo Tire North America Mfg., Inc. v. Davis*, 299 Ga. 155, 161 (2) (787 SE2d 171) (2016). However, when factual issues are presented on cross-motions for summary judgment, as they are here, "we view the evidence in the light most favorable to the nonmovants." *Raffensperger v. Jackson*, 316 Ga. 383, 387 (2)

---

[2] This case was orally argued on March 21, 2024. We thank Georgians for Lawsuit Reform and the Georgia Trial Lawyers Association for their helpful amicus curiae briefs.

(888 SE2d 483) (2023).

So viewed, in early 2020, Albert Omstead engaged BPG Inspection to inspect a property the Omsteads wanted to purchase. Golden, a BPG employee, inspected the property on February 13, 2020. On the same day and before the inspection, Mr. Omstead signed an agreement ("Inspection Agreement" or "Agreement") provided by BPG, which contained several limitations on liability, including a provision limiting BPG's liability to one year from the inspection. In pertinent part, this one-year limitation stated in bolded font:

> YOU MAY NOT FILE A LEGAL ACTION, WHETHER SOUNDING IN TORT (EVEN IF DUE TO OUR NEGLIGENCE OR OTHER FAULT), CONTRACT, ARBITRATION OR OTHERWISE, AGAINST US OR OUR EMPLOYEES MORE THAN ONE YEAR AFTER THE INSPECTION, EVEN IF YOU DO NOT DISCOVER A DEFECT UNTIL AFTER THAT.

In exchange for a $380 inspection fee, Golden performed an inspection and prepared an inspection report ("Report"). The Report provided numerous comments on items needing repair or posing health and safety concerns, but stated that "[l]atent, inaccessible, or

3

concealed defects are excluded from this inspection." Instead, the Report described the inspection's scope as "a non-invasive examination of readily accessible systems and components as outlined in the Standards of Practice of the American Society of Home Inspectors" or in the client's "specific state standards." As part of the inspection, Golden looked at a retaining wall running the length of the property's driveway. The Report noted that the wall had been "[i]nspected," which the Report defined as "visually observed and appears to be functioning as intended." The Report did not identify defects in the retaining wall or recommend that the wall be repaired.

On March 7, 2020, Golden, at the request of Omstead's real estate agent, returned to the property to reinspect several items that the Omsteads had requested that the seller repair pursuant to BPG's recommendations. After that inspection, a second inspection report and summary of key findings were generated, but neither document identified defects in the retaining wall or recommended

4

that the wall be repaired.[3]

Following the inspections, the Omsteads purchased the property. On July 16, 2020, Omstead posted on Instagram photos of the retaining wall and garage, with a caption including the observation that "[t]here are cracks in the retaining wall that spit water when it rains, but no official drain holes."

Over a year later, during a rainstorm on July 19, 2021, Mr. Omstead began placing a plastic tarp and a piece of particle board on top of the retaining wall to divert water away from the garage. As he was doing so, the wall collapsed on him, and he died as a result.

In September 2021, Omstead filed suit against BPG and Golden for wrongful death, alleging negligence, fraud, breach of

---

[3] Omstead claims that this second inspection is not covered by the Inspection Agreement, pointing to language in the Agreement stating that "[t]his fee is based on a single visit to the property," to testimony that a reinspection is "another inspection," and to the lack of a second agreement. However, Omstead does not dispute that the second inspection was a follow-up to the first inspection to ensure that the recommended repairs were made. Thus, the second inspection flows directly from the Inspection Agreement, and the evidence on which Omstead relies does not create a genuine issue of material fact as to whether the second inspection was covered by the Inspection Agreement.

contract, and breach of express and implied warranties, among other claims. She later added a count for gross negligence.[4] BPG moved for summary judgment, seeking to enforce the Inspection Agreement's limitations on liability, including its one-year limitation. Omstead filed a cross-motion for summary judgment, asking, among other things, that the trial court hold that the one-year limitation provision was void as against public policy and, in the alternative, that the limitation did not apply to Omstead's claims because it is an exculpatory clause that must be read strictly against the drafter and the clause only refers to claims for property damage.

The trial court denied BPG's motion for summary judgment and granted Omstead's cross-motion, concluding that the Agreement's limitations on liability did not apply to Omstead's personal injury and wrongful death claims, and that to the extent they did, they were void as against public policy.

The Court of Appeals reversed and directed the trial court to

---

[4] Omstead also added claims as representative of Mr. Omstead's estate.

enter summary judgment in favor of BPG. As an initial matter, the Court of Appeals held that though the Inspection Agreement was between BPG and Mr. Omstead, BPG could assert the Agreement's one-year limitation as a defense against Omstead's claims as well. See *BPG Inspection, LLC v. Omstead*, 367 Ga. App. 128, 131-32 (1) (883 SE2d 593) (2023) ("'any defense which would have been good against the decedent is good against his representatives in a wrongful death action'" (emphasis omitted; quoting *United Health Svcs. of Ga. v. Norton*, 300 Ga. 736, 738 (2) (797 SE2d 825) (2017)). Next, the Court of Appeals concluded, as a matter of contractual interpretation, that the Agreement's one-year limitation applied to all of Omstead's claims, including her tort claims, because the limitation expressly applied to any "legal action, whether sounding in tort (even if due to [BPG's] negligence or other fault), contract, arbitration or otherwise[.]" See 367 Ga. App. at 132 (1) (quoting Inspection Agreement). Finally, the Court of Appeals held that the one-year limitation was enforceable and not void as against public policy. See id. at 132-36 (1).

We granted review on two questions: (1) Did the Court of Appeals err in approving a provision in a contract between a home inspection company and a consumer that limits the home inspection company's liability for claims arising out of any breach of its legal or contractual duties to within one year after the inspection? (2) Is such a provision void as against public policy?

2. We first consider whether the Court of Appeals erred in enforcing the one-year limitation against Omstead. First, Omstead argues that the one-year limitation applies only to contract claims and not claims involving bodily injury or wrongful death or to claims for gross negligence and fraud. Next, she asserts that the Court of Appeals erred in treating the one-year limitation as a "statute of limitation" even though the limitation functioned as a "contractually-effectuated statute of repose," which Omstead claims Georgia law prohibits. Third, she argues that the one-year limitation impermissibly voids "professional standards of conduct." We address each argument in turn.

(a) "The cardinal rule of [contract] construction is to ascertain

8

the intention of the parties. Where the language in a contract is unambiguous, that task is often a straightforward one." *Sutherlin v. Sutherlin*, 301 Ga. 581, 584-85 (II) (A) (802 SE2d 204) (2017) (citation and punctuation omitted). Turning to the language of the contract, we observe that the one-year limitation provides: "You may not file a legal action, whether sounding in tort (even if due to [BPG's] negligence or other fault), contract, arbitration or otherwise[.]" By its plain language, the one-year limitation expressly applies to tort and contract claims. Thus, as a threshold matter, we agree with the Court of Appeals's interpretation of the one-year limitation as applying to Omstead's wrongful death claims, which sound in tort and contract. See *First Acceptance Ins. Co. of Georgia, Inc. v. Hughes*, 305 Ga. 489, 494 (2) (826 SE2d 71) (2019) ("Contractual language that is plain, unambiguous, and capable of only one reasonable interpretation must be afforded its literal meaning" (citation and punctuation omitted)). Compare *Langley v. MP Spring Lake, LLC*, 307 Ga. 321, 327 (834 SE2d 800) (2019) (construing a lease agreement's limitation on liability as applying

9

"only to claims arising from the contract, and not to Langley's free-standing tort claims," where that limitation used the words "any legal action" but did not expressly state that it applied to tort claims).[5]

Relying on *McFann v. Sky Warriors, Inc.*, 268 Ga. App. 750 (603 SE2d 7) (2004), Omstead argues that even if the one-year limitation applies to tort claims in general, the Court of Appeals erred in enforcing the one-year limitation to bar her claims for gross negligence and fraud because such a limitation is an exculpatory clause and such clauses have been held to not apply to claims of gross negligence and fraud. See id. at 758 (4) ("Although exculpatory clauses are valid and binding and not void as against public policy, exculpatory clauses do not relieve a party from liability for acts of

---

[5] Omstead argues that the one-year limitation does not apply to her wrongful death claims because the Inspection Agreement focuses on the discovery and repair of property "defects" rather than on death or bodily injury. But again, Omstead's wrongful death claims sound in tort and contract, and the one-year limitation plainly states that she may not file "a legal action, whether sounding in *tort* (even if due to [BPG's] negligence or other fault) [or] *contract* [.]" (emphasis supplied). Thus, we read the limitation as applicable to Omstead's wrongful death claims. See *First Acceptance Ins. Co.*, 305 Ga. at 494 (2).

gross negligence or wilful or wanton conduct." (citation and punctuation omitted)).

An "exculpatory clause" is "[a] contractual provision relieving a party from liability resulting from a negligent or wrongful act." EXCULPATORY CLAUSE, Black's Law Dictionary (11th ed. 2019). But here, even if the limitation operates to bar suit against BPG given the timing of Mr. Omstead's death, the limitation did not purport to relieve or release BPG from liability, because the limitation permitted suit against BPG—that is, subjected BPG to potential liability—within a year from the inspection.[6] Compare *Emory University v. Porubiansky*, 248 Ga. 391, 392 (282 SE2d 903) (1981) (language in dental form providing that the patient agreed to "'expressly waive and relinquish any and all claims of every nature I or my minor child or ward may have'" and further "'to hold them harmless as the result of any claims by such minor child or ward, arising out of any dental treatment rendered, regardless of its

---

[6] We express no opinion on whether a contractual limitation period shorter than one year from the date an action accrues or from another date, amounts to or could amount to an exculpatory clause.

11

nature or extent'" was an exculpatory clause); *McFann*, 268 Ga. App. at 751, 753-54 (2) (exculpatory clause provided that "'Participant hereby releases, waives, and forever discharges Sky Warriors, Inc.'" from liability, without permitting any period to file suit); *Colonial Properties Realty Ltd. Partnership v. Lowder Const. Co.*, 256 Ga. App. 106, 107, 112 (5) (567 SE2d 389) (2002) (exculpatory provisions provided that a party "waive[d] all rights" for various fire damages, without specifying a timeframe where the rights were still preserved). Accordingly, we conclude that the principle enunciated in *McFann*—that "exculpatory clauses" do not protect against liability for gross negligence or wilful or wanton conduct, see 268 Ga. at 758 (4)—does not apply to the one-year limitation in this case.

(b) Omstead also contends that the limitation provision should not be enforced because it acts as a "contractual repose" provision, running from the date of the inspection rather than the date that her action accrued. As relevant here, Omstead asserts a claim for wrongful death, which "does not accrue until the death occurs[.]" *Williams v. Georgia Dept. of Human Resources*, 272 Ga. 624, 626

12

(532 SE2d 401) (2000). See OCGA § 9-3-33 ("[A]ctions for injuries to the person shall be brought within two years after the right of action accrues[.]"). Omstead thus argues that the one-year limitation expired before the wrongful death claim accrued, depriving Omstead of the opportunity to assert a claim, and that no such type of "contractual repose" provision has been enforced in Georgia.

We start with first principles. "[A] party may contract away liability to the other party for the consequences of his own negligence without contravening public policy, except when such agreement is prohibited by statute." *Milliken & Co. v. Georgia Power Co.*, 306 Ga. 6, 8 (1) (829 SE2d 111) (2019) (citation and punctuation omitted). See *New v. Southern R. Co.*, 116 Ga. 147, 147-51 (42 SE 391) (1902) (holding that contractual clause exempting railway company from liability for injuries sustained by employees during employment, could bar non-criminal negligence claims against company).

Omstead offers no case where we have rejected a contractual provision like the one-year limitation in this case on the grounds that the limitation period expired before a party's claims accrued or

13

on the grounds that the limitation period deprived a party of the opportunity to bring a claim. And given our longstanding caution in interfering with the freedom of parties to contract, our silence on "contractual repose" periods is not enough for us to declare them void or unenforceable. See generally *Innovative Images, LLC v. Summerville*, 309 Ga. 675, 681 (3) (a) (848 SE2d 75) (2020) ("this Court long emphasized that courts must exercise extreme caution in declaring a contract void as against public policy and may do so only where the case is free from doubt and an injury to the public clearly appears" (citation and punctuation omitted)); *Nat'l Cas. Co. v. Georgia Sch. Boards Assn.-Risk Mgmt. Fund*, 304 Ga. 224, 229 (818 SE2d 250) (2018) ("it is the paramount public policy of this State that courts will not lightly interfere with the freedom of parties to contract on any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears" (citation and punctuation omitted)).

Moreover, while we have not found a case from this Court considering whether to enforce a contractual limitation provision

precisely like the one here, we have long enforced contractual provisions setting a time period in which a party can file an action, even when that period is shorter than the one, if any, set by statute—that is, even when the period functions to deprive a party of the chance to file suit where the law would otherwise permit suit. See *Langley*, 307 Ga. at 321-23 & n.1 (agreeing that a contract's one-year limitation period could apply to a breach-of-contract claim even though statute of limitation for breach of a written contract is six years under OCGA § 9-3-24); *Thornton v. Ga. Farm Bureau Mut. Ins. Co.*, 287 Ga. 379, 380, 380-81 (1), 389 (4) (695 SE2d 642) (2010) (approving insurance contract's one-year limitation period even though statute of limitation for contract claims was six years); *Mass. Benefit Life Assn. v. Robinson*, 104 Ga. 256, 272 (30 SE 918) (1898) ("[I]t is [ ] within the power of the contracting parties to agree among themselves upon a period of time which would amount to a statute of limitations, either greater or less than the period fixed by the law"); *Brown v. Savannah Mut. Ins. Co.*, 24 Ga. 97, 101 (1858) (approving six-month contractual limitation period and stating

15

"[t]here is no reason why a party may not enter into a covenant, that for an alleged breach of contract, the injured party shall sue within a period less than that fixed by the statute of limitations as a bar"). We see no reason why the one-year limitation in this case should not likewise be enforced.

Next, Omstead argues that we should refuse to enforce the one-year limitation, because by barring Omstead's claims before they accrued, the limitation is akin to the statutes of repose that ran from the date a negligent act or omission occurred and that we found unconstitutional in *Clark v. Singer*, 250 Ga. 470, 471-72 (298 SE2d 484) (1983), and in *Shessel v. Stroup*, 253 Ga. 56, 56, 58 (316 SE2d 155) (1984). But *Clark* and *Shessel* are inapposite. In both cases we held that a statute of repose was unconstitutional as applied, because the statute violated equal protection clauses under the federal and state constitutions. See *Clark*, 250 Ga. at 472 ("We find no rational basis for a limitation scheme which permits a medical malpractice wrongful death action if the patient dies within two years of the defendant's negligent act but which bars a wrongful

16

death action if the patient lives for two years after defendant's negligent act where the defendant is a doctor but not in other wrongful death cases."); *Stressel*, 253 Ga. at 58 (similar statutory scheme involving a period of repose failed to show "substantial relation" to the object of the legislation). Here, by contrast, Omstead makes no argument challenging any statutory scheme on equal protection grounds.

(c) In addition, Omstead argues that the one-year limitation should not be enforced because it "contractually avoid[s] professional standards of conduct" in violation of *Porubiansky*. There, we held that "it is against the public policy of this state to allow one who procures a license to practice dentistry to relieve himself by contract of the duty to exercise reasonable care." *Porubiansky*, 248 Ga. at 394. Omstead argues that home inspectors owe duties under OCGA §§ 8-3-331 and 8-3-332, including duties to provide a written report and make recommendations for repairs.[7]

---

[7] Omstead also suggests that BPG owed Mr. Omstead duties that one owes those for whom one voluntarily undertakes to perform services. See

17

But *Porubiansky* is distinguishable. There, we did not enforce the liability release at issue because "the attempt to relieve the clinic . . . from the statutory duty of care for licensed professional medical services conflicts with and frustrates the policies of the state as expressed through our General Assembly." 248 Ga. at 392-93. Dentistry, we explained, is a profession "licensed and controlled by the state." See id. at 393-94 (citing Ga. Code Ann. of 1933, Chapter § 84-7). The "legislature has established a minimum standard of care" that "governs the duties and responsibilities of a dentist." Id. at 394 (citing Ga. Code Ann. of 1933, § 84-924 (now OCGA § 51-1-27) ("A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill.")).

The statutory backdrop in *Porubiansky*—which reflected "the

*Rymer v. Polo Golf & Country Club Homeowners Assn., Inc.*, 335 Ga. App. 167, 175-76 (2) (b) (780 SE2d 95) (2015) (referencing Restatement (Second) of Torts § 323 to discuss a duty of one who voluntarily undertakes to perform a service for another who relies on it, to perform that service with reasonable care). But BPG was compensated for performing the inspection, so the voluntary undertaking doctrine does not apply.

18

strong policy of the state . . . to regulate those professionals that it licenses," 248 Ga. at 393-94—is not present here. While dentists are licensed professionals under the Georgia Code, see OCGA § 43-11-1, et seq. (Title 43 ("Professions and Businesses"), Chapter 11 ("Dentists, Dental Hygienists, and Dental Assistants")); Ga. Code Ann. of 1933, Chapter § 84-7, no similar statutory scheme or policy to license home inspectors exists. And, the statutory scheme governing home inspections focuses on the content of the inspections and resulting reports, rather than on the duty of home inspectors as professionals. Omstead points to OCGA § 8-3-331,[8] but nothing in the statute's plain text imposes upon home inspectors a duty to conduct an inspection with a particular standard of care, as do the

---

[8] OCGA § 8-3-331 states:

Every home inspector shall provide to the person on whose behalf a home or single-family dwelling is being inspected a written document specifying:

(1) The scope of the inspection, including those structural elements, systems, and subsystems to be inspected;
(2) That the inspection is a visual inspection; and
(3) That the home inspector will notify in writing the person on whose behalf such inspection is being made of any defects noted during the inspection, along with any recommendation that certain experts be retained to determine the extent and corrective action necessary for such defects.

19

statutes governing dentists and other medical professionals. See *Porubiansky*, 248 Ga. at 393-94. Instead, the statute merely requires a home inspector to provide a "written document" specifying certain aspects of the inspection: (1) the inspection's "scope," (2) "[t]hat the inspection is a visual inspection," and (3) "[t]hat the home inspector will notify in writing" the consumer "of any defects noted during the inspection, along with any recommendation that certain experts be retained to determine the extent and corrective action necessary for such defects."[9] OCGA § 8-3-331.

Unless the contractual provision is otherwise in contravention of public policy, which we consider below, Omstead has offered no reason not to enforce the one-year limitation here—a period the parties have mutually agreed to by contract—even though the one-year period expired before Omstead's wrongful death claim accrued. Thus, we answer the first question posed on certiorari in the negative: the Court of Appeals did not err in approving a provision

---

[9]OCGA § 8-3-332, in turn, provides that those who violate OCGA § 8-3-331 "shall be guilty of a misdemeanor."

in a contract between a home inspection company and a consumer that limits the home inspection company's liability for claims arising out of any breach of its legal or contractual duties to within one year after the inspection.[10]

3. Turning to the second question, we consider whether the one-year limitation is void as against public policy. "A contract that is against the policy of the law cannot be enforced." OCGA § 13-8-2 (a). And as this Court has stated:

> A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract

---

[10] At oral argument, some members of the Court raised the concern that the one-year limitation may be voidable as unconscionable. We have defined an unconscionable contract as one that "no sane man not acting under a delusion would make and that no honest man would take advantage of[.]" *NEC Technologies., Inc. v. Nelson*, 267 Ga. 390, 391 (1) n.2 (478 SE2d 769) (1996) (citation and punctuation omitted). Though an unconscionability inquiry may overlap with an inquiry on whether a contract violates public policy, the two inquiries are different. Compare *Innovative Images*, 309 Ga. at 684-85 (3) (b) ("We examine unconscionability from the perspective of substantive unconscionability, which looks to the contractual terms themselves, and procedural unconscionability, which considers the process of making the contract." (emphasis, citation, and punctuation omitted)), with *Dept. of Transp. v. Brooks*, 254 Ga. 303, 312 (1) (328 SE2d 705) (1985) (a contract is not contrary to public policy unless the legislature has declared it to be so, or unless its consideration or purpose is illegal or immoral). Because Omstead never argued before the trial court that the one-year limitation was unconscionable, we decline to address whether the limitation is voidable as unconscionable.

is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law.

*Dept. of Transp. v. Brooks*, 254 Ga. 303, 312 (1) (328 SE2d 705) (1985) (citation and punctuation omitted). See also OCGA § 1-3-7 ("Laws made for the preservation of public order or good morals may not be dispensed with or abrogated by any agreement. However, a person may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest."). We have long emphasized that "'courts must exercise extreme caution in declaring a contract void as against public policy' and may do so only 'where the case is free from doubt and an injury to the public clearly appears.'" *Innovative Images*, 309 Ga. at 681 (3) (a) (quoting *Porubiansky*, 248 Ga. at 393). "Importantly, a contract is void as against public policy not because the *process* of entering the contract was improper and objectionable by one party or the other, but rather because the *resulting agreement* itself is illegal and normally unenforceable by either party." Id. (emphasis in original).

Omstead argues that the one-year limitation is void because it

violates OCGA § 13-8-2 (b), which states, in pertinent part:

A covenant, promise, agreement, or understanding [1] *in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance* of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, [2] *purporting to require that one party* to such contract or agreement *shall indemnify, hold harmless, insure, or defend the other party* to the contract or other named indemnitee, including its . . . employees, against liability or claims for damages, losses, or expenses, including attorney fees, arising out of bodily injury to persons, death, or damage to property caused by or resulting from the sole negligence of the indemnitee, or its . . . employees, *is against public policy and void and unenforceable.*

(Emphasis supplied).

Omstead contends that the Inspection Agreement is a "contract or agreement relative to the construction, alteration, repair, or maintenance" of property, see OCGA § 13-8-2 (b), because the Agreement mentions "repairing [a] defect," an inspection was performed to identify defects in need of repair, and an inspection report was generated that contained many comments concerning "defects" and "repairs." See *Milliken*, 306 Ga. at 10 (1) (a) ("Georgia courts have consistently construed OCGA § 13-8-2 (b) broadly"

23

(citation and punctuation omitted)); *Kennedy Dev. Co., Inc. v. Camp*, 290 Ga. 257, 259-60 (719 SE2d 442) (2011) (listing a variety of contracts to which OCGA § 13-8-2 (b) has been applied).

Assuming, without deciding, that the Inspection Agreement is a type of contract that falls under OCGA § 13-8-2 (b), we consider whether the one-year limitation "purport[s] to require that one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party." See OCGA § 13-8-2 (b); *Kennedy*, 290 Ga. at 259 ("[I]n order to fall within the ambit of [OCGA § 13-8-2 (b)], an indemnification provision must . . . promise to indemnify a party for damages arising from that own party's sole negligence.").

Omstead contends that the one-year limitation is void because it requires Omstead to "indemnify" or "hold [BPG] harmless."[11] We have defined indemnity as "the obligation or duty resting on one person to make good any loss or damage another has incurred by

---

[11] Omstead does not contend that the one-year limitation required Omstead to "insure" or "defend" BPG. Also, Omstead does not claim any material difference between an "indemnity" and "hold harmless" provision. We need not parse whether there is any material difference between these types of provisions because we conclude that the one-year limitation is neither.

24

acting at his request or for his benefit." *Lanier at McEver, L.P. v. Planners & Engineers Collaborative, Inc.*, 284 Ga. 204, 206-07 (2) (663 SE2d 240) (2008) (citation and punctuation omitted). See INDEMNIFY, Black's Law Dictionary, 11th ed. ("Indemnify" means "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default," to "promise to reimburse (another) for such a loss," or to "give (another) security against such a loss."). To "hold harmless" means to "absolve (another party) from any responsibility for damage or other liability arising from the transaction." HOLD HARMLESS, Black's Law Dictionary, 11th ed. See *Lanier*, 284 Ga. at 209-10 (1) (Melton, J., dissenting) (citing Black's Law Dictionary 731 (6th ed. 1990) to state that "[a] hold harmless clause is an '[a]greement or contract in which one party agrees to hold the other without responsibility for damage or other liability arising out of the transaction involved.'").

Here, the plain text of the one-year limitation does not require Omstead to reimburse or "make good" any damage to BPG, nor does it require that Omstead hold BPG harmless for any loss. See *Lanier*,

284 Ga. at 206 (2) (citation and punctuation omitted). Compare *Milliken*, 306 Ga. at 7 (provision stated that one party "shall hold [Milliken] . . . harmless from any damages to property or persons" resulting from that party's conduct (punctuation omitted)); *Kennedy*, 290 Ga. at 258 (indemnification and hold-harmless provision stated that an entity "shall . . . indemnify, defend and hold [Appellant] harmless").

Yet, Omstead argues that the one-year limitation still functions as an indemnity or hold-harmless provision, just as a contractual clause did in *Lanier*, 248 Ga. at 206-07 (2). In *Lanier*, a large construction developer retained a civil engineering firm to design a storm-water drainage system and, in the contract for services, agreed to a clause limiting the liability of the engineering firm for any claims, including those of third parties, to the engineering firm's fee for the services. See *Lanier*, 284 Ga. at 204-05. We recognized in *Lanier* that though the clause did not explicitly require the developer to "indemnify" or "hold harmless" the engineering firm, the clause nonetheless acted as an indemnity and

hold-harmless provision because it applied to "any and all claims by third parties and shift[ed] all liability above the fee for services to Lanier no matter the origin of the claim or who is at fault." Id. at 207-08 (2) (punctuation omitted).

Here by contrast, the one-year limitation does not authorize BPG to recover from Omstead damages that BPG has incurred because of a third-party claim arising from BGP's sole negligence. The one-year limitation does not "shift liability" from BPG to Omstead: Omstead is not being made to pay for the damages that BPG owes a third party. Nor does the limitation "absolve" BPG from liability. See HOLD HARMLESS, Black's Law Dictionary, 11th ed. Instead, the limitation only requires Omstead to "not file a legal action" after one year from the inspection, permitting suit to be filed against BPG within the one-year period—and thus the possibility that BPG incur "responsibility" for damage arising from the inspection. See *Lanier*, 284 Ga. at 209-10 (1).

For these reasons, we conclude that the one-year limitation does not violate OCGA § 13-8-2 (b) and is not void as against public

27

policy.[12]

*Judgment affirmed. All the Justices concur, except Pinson, J., disqualified.*

---

[12] Omstead also contends, in passing, that the one-year limitation violates OCGA § 13-8-2 (c), which applies to contracts or agreements "in . . . engineering, architectural, or land surveying services" and requiring one party to "indemnify, hold harmless, insure, or defend" another. Even if we assume that the Inspection Agreement is the type of agreement covered by OCGA § 13-8-2 (c), we conclude, for the same reasons as above, that the one-year limitation is not an indemnity or a hold-harmless provision and thus does not violate OCGA § 13-8-2 (c).

PETERSON, Presiding Justice, concurring *dubitante*.

I concur in the decision of the Court because it is a faithful application of our precedent. But I do so *dubitante* because I cannot kick the nagging sense that there's something missing from the law. Footnote 6 appropriately notes that we do not address whether a shorter limitations period would have been enforceable. During argument, the question was put to counsel for BPG as to whether a limitation period shorter than a year could ever be enforceable. Counsel stated that a period of one day would be unconscionable.[13] In follow-up questions, counsel acknowledged that a 30-day period would be unconscionable, and could not identify where the line was that rendered a limitations period too short to be enforceable.

But neither can I. And there may not be just one line; it seems reasonable to think that the subject matter of the contract is

---

[13] As the Court's opinion notes, we do not consider unconscionability here because the plaintiff did not raise it below. But it's not clear to me that a too-short limitations period must *always* be assessed under only unconscionability, rather than assessed through a public policy lens as an exculpatory clause. The effect of a too-short limitations period seems to me as not materially different from an exculpatory clause.

relevant to how long a period must be (during questioning, counsel acknowledged that subject matter "may be" relevant). For example, a sufficient limitations period for a contract for replacement of brake pads could likely be shorter than the limitations period would need to be for a contract for construction of underground infrastructure, where one would expect a defect to take longer to become noticeable. And if that's so, a contract for building inspection (like the one at issue here) would seem to be closer to the latter.

But these sorts of distinctions are difficult for a court to draw in any principled manner, and I don't see a clear legal basis under our precedent for doing so in a way that sets the line at more than one year in this case. And as the Court's decision makes clear, our precedent is best read to leave those distinctions for the legislature to draw. For that matter, that's a point Presiding Judge Barnes made below in her full and special concurrence, which I agree with to that extent. See *BPG Inspection, LLC v. Omstead*, 367 Ga. App. 128, 136 (883 SE2d 593) (2023) (Barnes, P.J., concurring fully and specially).

30

In short, I don't have a sufficient legal basis to dissent from the Court's conclusion that nothing in our law allows us to say that the one-year contractual limitations period here was void for public policy, and so I join the opinion of the Court fully. I just do so with some unresolved questions, and thus I concur *dubitante*.