**FIFTH DIVISION
MERCIER, C. J.,
MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 18, 2024**

# In the Court of Appeals of Georgia

A24A0823. HUMBLE v. OPENDOOR PROPERTY J., LLC.

MERCIER, Chief Judge.

Stacie Humble loaned Jackie Patton $10,000 in order to pay a tax bill for property he stood to inherit. The two signed a half-page loan agreement ("agreement") and used a piece of real property as collateral for the loan. Claiming that she owned the property due to Patton's failure to timely repay the loan, Humble later filed a dispossessory action against Patton. Opendoor Property J, LLC, ("Opendoor") intervened in the action after Humble claimed she owned property Opendoor had purchased from Patton. The parties filed cross-motions for summary judgment. The trial court granted Opendoor and Patton's motion for summary judgment and denied Humble's motion. Humble filed this appeal, arguing that the

trial court erred by finding that the agreement was ambiguous, that Patton complied with the agreement and that the transaction constituted a trust or implied trust. For the following reasons, we affirm the trial court's denial of summary judgment to Humble and reverse the grant of summary judgment to Patton and Opendoor.

On appeal, we "review the legal issues raised in a grant or denial of a motion for summary judgment de novo. However, when factual issues are presented on cross-motions for summary judgment, as they are here, we view the evidence in the light most favorable to the nonmovants." *Omstead v. BPG Inspection, LLC*, 319 Ga. 512, 513 (1) (903 SE2d 7) (2024) (citation and punctuation omitted); see also OCGA § 9-11-56 (c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

So viewed, the evidence shows the following. Patton received a tax bill for property that he was going to inherit, located at 774 Murphy Road in Winder, Georgia ("774 Murphy Road"). Patton told Humble about the tax bill, and she offered to loan him $10,000 if 774 Murphy Road served as collateral.

On December 22, 2020, Humble took Patton to meet with attorney Marcus Rosin, who "drafted [a]dministrator's [d]eeds to transfer two properties" from Patton's father's estate into Patton's name, including the 774 Murphy Road property. Rosin also drafted a deed transferring 774 Murphy Road from Patton to Humble as security for the $10,000 loan. Rosin averred that:

> At the request of Patton and Humble, [I] prepared a Limited Warranty Deed ("Deed") from Patton, as Grantor[,] and Humble, as Grantee[,] conveying the . . . Property to provide security for a loan to Patton; but it was expressed to me by both Patton and Humble that the Deed would not be filed unless and until Patton defaulted on his loan obligations. Humble obtained possession of the Deed after signing.

Similarly, Patton averred that Humble told him that she "would not file [the deed]; instead, she would keep it in her safe where we could access it any time we needed to. Based on [Humble's] promise not to file the deed, [Patton] signed [the deed] and [Humble] took it[.]" Humble denies making this promise.

On December 29, 2020, Humble recorded the Limited Warranty Deed. Rosin filed the deeds transferring the properties from Patton's father's estate to Patton on December 30, 2020.

Two weeks later, on January 12, 2021, Humble requested that Patton sign the agreement, wherein he would pay her $13,500 by April 15, 2021, and, once he paid back the amount, the "[q]uit [c]laim deed" would be executed back to Patton. The loan agreement stated that the "[l]oan is to be repaid by the lender [defined within the agreement as Humble] on or before midnight, April 15, 2021." Furthermore, the agreement stated: "Collateral for loan is homestead property of borrower in the form of a Quit Claim deed, signed by both parties and notarized (Murphy Rd[.] Farm in Barrow County)." When Patton signed the agreement, Humble had not told him that she had already filed the deed.

As they approached the April 15 deadline, Patton asked Humble and her husband if he could pay "them back a couple weeks late out of a closing for a piece of real estate [Patton] was selling." According to Patton, they both told him "that it would be fine for [him] to pay them a couple of weeks late." Humble, however, averred that she never granted Patton additional time to pay back the loan. Patton failed to pay back the loan, and on November 16, 2021, Humble sent correspondence to Patton demanding possession of 774 Murphy Road.

Humble filed her dispossessory action against Patton on December 10, 2021. She later amended her lawsuit to add claims for breach of contract, ejectment, trover and conversion, trespass and attorney fees, amongst other claims. Patton tendered $13,500 into the trial court's registry on October 25, 2022.

While the matter was pending, on June 22, 2022, Patton sold 787 Murphy Road, to Opendoor for $300,000. Thereafter, in September of 2022, Humble wrote to Opendoor contending that she was the owner of 774 Murphy Road, which included 787 Murphy Road, and that Opendoor needed to "immediately leave the premises." Opendoor was allowed to intervene in the underlying action on January 13, 2023.

Humble filed this appeal of the trial court's grant of summary judgment to Opendoor and Patton, and the denial of her motion for summary judgment.

1. The trial court granted summary judgment to Opendoor and Patton by finding that the agreement's sentence stating that the "[l]oan is to be repaid by *lender* on or before midnight, April 15, 2021" was "ambiguous at best, and creates no due date for performance by [Patton.]" (emphasis supplied). Humble argues that the trial court erred by failing to recognize that the agreement contained a scrivener's error. We agree.

"The cardinal rule of contract construction is to ascertain the intention of the parties. Where the language in a contract is unambiguous, that task is often a straightforward one." *Omstead*, 319 Ga. at 515 (2) (a) (citation and punctuation omitted). "Even ambiguous contracts are to be construed by the court unless an ambiguity remains after application of applicable rules of construction." *Benedict v. Snead*, 271 Ga. 585, 586 (519 SE2d 905) (1999) (citation and punctuation omitted). "One of those rules is that a scrivener's error should not be permitted to defeat the clear intention of the parties, as otherwise evidenced by the entirety of the contract." Id.

Here, the only reasonable interpretation of the contract is that the sentence regarding repayment contains a scrivener's error. See *Brown v. Assurance American Ins. Co.*, 354 Ga. App. 373, 375-376 (2) (841 SE2d 15) (2020) (looking to the only reasonable interpretation, to determine that the applicant made a scrivener's error writing the date on an insurance application as "5/23/17," when the applicant completed the application on February 23, 2017). To argue otherwise, that the lender, after loaning money to the borrower, would repay the loan she made in the first place, strains credibility. Further, in order to ascertain the clear intention of the parties, we

6

must look at the entirety of the contract. See *Benedict*, 271 Ga. at 586. The half-page agreement also states that "[t]he borrower [defined as Patton] agrees to pay back the total of 10,000 plus interest in the amount of $3500." As the entirety of the contract provides the parties' intention, that the borrower, not the lender, would pay back the loan, the trial court erred by failing to recognize the scrivener's error. See id. (where a contract set a closing date of "on or before before April 15, 1998," and one "before" was printed in the form contract and the other was added by a type writer, "the addition of the typewritten 'before' constitutes no more than an inadvertent and superfluous error on the part of the drafter"). Accordingly, the trial court erred in its determination that the agreement created no due date for repayment of the loan.

2. Humble also argues that the trial court erred by finding that Patton's payment into the trial court's registry complied with the agreement and relieved him of breach. We agree that an issue of material fact remains regarding breach of the contract and that summary judgment was inappropriate.

"As the party relying on the contract, [Humble] had the burden of proving its existence and terms." *Shilling v. Cornerstone Med. Assoc.*, 290 Ga. App. 169, 170 (659 SE2d 416) (2008) (citation and punctuation omitted). "Further, where there is

7

ambiguity, the agreement will be construed against the drafter and in favor of the non-drafter." *Langley v. MP Spring Lake, LLC*, 307 Ga. 321, 324 (834 SE2d 800) (2019).

The agreement, which Humble drafted, does not provide a default provision. Humble encourages us to read a default provision into a sentence within the agreement: "When loan in [sic] repaid a Quit Claim Deed of homestead property (Murphy Rd Farm, Barrow County) will be executed back to Jackie Don Patton from Stacie Lynn Humble." Humble argues that the contract "impl[ies] that only if Patton repays by the stated deadline of April 15, 2021 (qualifying for 'repaid status') will the quitclaim deed to Murphy Road Farm be delivered to Patton." In essence, Humble asks us to infer from the contract that, if Patton failed to pay back the $10,000 loan (with $3,500 interest) by April 15, 2021, Humble would be entitled to 26 acres of land (worth hundreds of thousands of dollars). The contract does not illustrate that this was the intention of the parties. See OCGA § 13-2-3 ("The cardinal rule of construction is to ascertain the intention of the parties.")

Because the contract fails to provide language regarding what happens if Patton required additional time to pay the loan back or if he defaulted on the loan entirely, we may look to parol evidence. Specifically,

> parol evidence is admissible to prove the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transactions between them.

*Namik v. Wachovia Bank of Georgia*, 279 Ga. 250, 251 (1) (612 SE2d 270) (2005) (citation and punctuation omitted). Here, the half-page agreement does not contain a merger clause or other provision stating that it was intended to be the entire agreement between the parties. *Jones v. The Baran Co.*, 290 Ga. App. 578, 582 (1) (660 SE2d 420) (2008).

While Patton averred that Humble agreed to provide him additional time to repay the loan, Humble averred that she did not grant Patton additional time, and, instead, she claims that Patton asked her to loan him an additional amount of money, which she ignored. As the contract is silent as to the consequences of default or delayed payment, Humble has failed to show breach of contract as a matter of law.

9

Further, an issue of material fact remains regarding the existence of an oral contract for late payment. Accordingly, "[t]his is a classic example of a 'battle of the affidavits' and a disputed issue of material fact." *Shilling*, 290 Ga. App. at 170-171. We therefore affirm the trial court's denial of Humble's motion for summary judgment, and reverse the trial court's grant of summary judgment to Patton and Opendoor. See id. (reversing grant of summary judgment in contract action where existence of contract was a disputed fact); see also *In re Estate of McKitrick*, 326 Ga. App. 702, 706-707 (2) (b) (757 SE2d 295) (2014) (where attorney fee agreement was silent as to the amount of the hourly rate, we remanded for consideration of parol evidence to show the intention of the parties).

3. Finally, Humble argues that the trial court erred by finding that the transaction created a resulting trust or an implied trust. The trial court found that Patton and Humble "created an implied trust or resulting trust for the benefit of [Patton] should [Humble] record the quitclaim deed to these properties, and as such, [Humble] is not entitled to ownership of the 774 Property and Opendoor Property [defined as 787 Murphy Road.]"

"An implied trust is defined as either a resulting trust or a constructive trust." *Ansley v. Raczka-Long*, 293 Ga. 138, 141 (2) (744 SE2d 55) (2013). "A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." OCGA § 53-12-132 (a). "In essence, a constructive trust is an equitable remedy imposed by a court to prevent unjust enrichment." *Price & Co v. Majors Mgmt.*, 363 Ga. App. 427, 438 (3) (b) (iv) (869 SE2d 587) (2022) (citation and punctuation omitted). "Equity will not allow one with a legal interest in a piece of property a windfall recovery when the beneficial interest should flow to another." *Ansley*, 293 Ga. at 141 (3) (citation and punctuation omitted).

Here, Patton and Rosin averred that Humble agreed to not file the deed until Patton defaulted on the loan. Without dispute, Humble filed the deed weeks before the agreement was even executed. See *Parris v. Leifels*, 280 Ga. 135, 136 (625 SE2d 390) (2006) ("A broken verbal promise may be the basis of a constructive trust . . . if it was fraudulently made with the intention of being broken and for the purpose of thereby obtaining title.") (citation and punctuation omitted). However, construing the

evidence in the light most favorable to Humble, who averred that she did not agree to wait to file the deed, we conclude that questions of material fact remain. Therefore, the trial court erred by granting summary judgment to Opendoor and Patton on this basis. See *Ansley*, 293 Ga. at 142 (3) (reversing grant of summary judgment when evidence raised an issue of material fact regarding whether a constructive trust should be implied).[1]

*Judgment affirmed in part, reversed in part. McFadden, P. J., and Rickman, J., concur.*

---

[1] On appeal, Humble attempts to argue that no constructive trust can exist because the agreement was a legal contract that cannot support unjust enrichment. See generally *Engram v. Engram*, 265 Ga. 804, 807 (2) (463 SE2d 12) (1995) ("Unjust enrichment applies when as a matter of fact there is no legal contract.") (citation and punctuation omitted). However, even assuming that it was possible to use a subsequently executed legal contract to avoid application of unjust enrichment, Humble failed to make this argument below. Because Humble did not state this specific ground that she now argues on appeal "we will not consider that ground on appeal." *Estate of Crook v. Foster*, 333 Ga. App. 36, 40 (1) n. 13 (775 SE2d 286) (2015) (citation and punctuation omitted).