**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 9, 2026**

# In the Court of Appeals of Georgia

A25A2039. J & S CHEMICAL CORPORATION v. UNIQUECHEM SOLUTIONS, INC.

McFADDEN, Presiding Judge.

In this breach of contract case, plaintiff Uniquechem Solutions, Inc. and defendant J & S Chemical Corporation filed opposing motions for summary judgment. After a hearing, the trial court held that that parties had amended in writing the price of the product J & S had been purchasing from Uniquechem. So the trial court granted Uniquechem's summary judgment motion and denied J & S' motion. J & S appeals. Because there are no genuine issues of material fact and Uniquechem was entitled to judgment as a matter of law, we affirm.

1. *Facts and procedural posture*

On appeal from an order deciding cross-motions for summary judgment, "we view the evidence in the light most favorable to the nonmovants." *Omstead v. BPG Inspection*, 319 Ga. 512, 513 (1) (903 SE2d 7) (2024) (citation and punctuation omitted).

So viewed, the evidence shows that in November 2020 the parties entered into an agreement for J & S to purchase the chemical product methyl hydrogen siloxane from Uniquechem at the price of $1.10 per pound, with the goods to be delivered on eight specific dates in 2021 pursuant to unique purchase orders for each delivery. The agreement provided that the $1.10 purchase price would remain in effect for the term of the contract "unless or until changed by the mutual written agreement of the Parties." The agreement, which was signed by Uniquechem Director Jamie Canfield and J & S Director of Operations Craig Smith, further provided that it "cannot be amended, supplemented, or modified in any way except by a writing signed by the Parties to the Agreement."

In March 2021, Uniquechem notified J & S of supply disruptions caused by the global pandemic and declared a "Force Majeure Event," which the agreement defined as a "delay or failure of a Party to perform its obligations under this Agreement

excused to the extent that the delay or failure was caused by an event beyond such Party's reasonable control (which events may include . . . supply disruptions)." Over the ensuing months, Uniquechem Director Canfield sent emails to J & S Director Smith and had phone discussions with him about increasing the purchase price because of these supply disruptions.

In September 2021, Canfield requested in an email to Smith that the price for two purchase orders, numbers 28709 and 28710, be raised from $1.10 to $3.25 per pound. In October 2021, Canfield emailed Smith and Nick Camp, a J & S employee who reported to Smith, requesting that purchase orders 28709 and 28710 be amended to reflect a new purchase price of $3.25 per pound. That same day, Camp emailed amended purchase orders 28709 and 28710 to Uniquechem. The amended purchase orders listed the $3.25 purchase price and contained the following language: "Approval: Craig Smith. Thank you for confirmation of pricing & receipt of this purchase order. Best Regards, Craig Smith J & S Chemical."

Approximately two weeks later, Smith sent an email to Canfield, which was also sent to Camp, thanking Canfield for an update on the delivery of purchase order 28709 and stating that J & S would "take the load for PO 28709" upon its delivery.

Uniquechem subsequently delivered the goods for both purchase orders 28709 and 28710 to J & S, which accepted the deliveries without objection and eventually sold the goods to their own customers.

Uniquechem sent invoices of $121,804 and $128,969 to J & S for the goods delivered and accepted pursuant to the respective amended purchase orders. But J & S refused to pay the full amounts billed, making a partial payment of $41,226. After Uniquechem attempted to collect the remaining sums, an attorney for J & S responded in a letter that J & S had fully paid Uniquechem pursuant to the original contract purchase price of $1.10 per pound.

Uniquechem filed a complaint against J & S for breach of contract, claiming that the parties had modified the agreement to increase the purchase price to $3.25 per pound for the two amended purchase orders and seeking $165,896 in unpaid principal, plus interest and attorney fees. The parties filed cross-motions for summary judgment, and after a hearing, the trial court granted Uniquechem's motion and denied J & S' motion. In its summary judgment order, the court found that the parties had amended the purchase price in writing by their electronically signed emails and the two amended purchase orders. This appeal followed.

2. *Denial of summary judgment*

J & S enumerates that the trial court erred in denying its motion for summary judgment. We disagree.

Summary judgment is appropriate if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56(c). "A defendant may prevail on a motion for summary judgment by presenting evidence negating an essential element of the plaintiff's claims or by pointing out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the plaintiff's case." *SMG Constr. Servs. v. Cook*, ___ Ga. ___ (922 SE2d 76) (2025) (citation and punctuation omitted).

Here, J & S points to two provisions in the purchase agreement, one about purchase orders and the other about waiver, arguing that they mandated summary judgment in its favor. But J & S has misconstrued the meaning and applicability of those provisions.

(a) *Purchase orders*

J & S first claims that the purchase agreement precluded the parties from amending the price via a purchase order. But J & S has failed to identify any such preclusive language in the agreement. Rather, the only contract language cited by J & S merely provides that if there is a "conflict between this Agreement and a Purchase Order, the terms of this Agreement shall prevail." This provision does not mention, let alone preclude, changing a purchase order price. See *Nat'l Hills Exch. v. Thompson*, 319 Ga. App. 777, 778 (736 SE2d 480) (2013) (where contract terms are clear, no construction of such plain contract language is permitted).

Conversely, as set out above, the purchase agreement plainly provides that the purchase price may be changed by written agreement of the parties. The purchase agreement does not specify any particular form for such a written agreement to change the price other than the provision requiring that any modification of the contract be "by a writing signed by the Parties to the Agreement." Here, the trial court found that the parties, after extensive discussions, agreed in signed writings to modify the purchase price as reflected by their emails, which included Uniquechem's emails signed by Canfield requesting the price change and the same-day responses from J & S sending the revised purchase orders approved and signed by Smith. See *Baker v.*

6

*Jellibeans, Inc.*, 252 Ga. 458, 460 (1) (314 SE2d 874) (1984) (written contract can consist of multiple signed, contemporaneous documents); OCGA § 10-12-2 (8) ("'Electronic signature' means an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record."). J & S has failed to show that the purchase agreement precluded such a finding by the trial court or otherwise mandated summary judgment as a matter of law in favor of J & S.

(b) *Waiver*

J & S also argues that the trial court erred in denying its motion for summary judgment based on a waiver provision in the purchase agreement, which provides: "No waiver under this Agreement is effective unless it is in writing, identified as a waiver to this Agreement and signed by the Party waiving its right." But J & S' reliance on this waiver provision is misplaced because this case does not involve waiver or any such finding of waiver by the trial court. In its summary judgment order, the court did not find that J & S had unilaterally waived any right; rather, as discussed above, the court found that the parties had mutually agreed to modify the purchase price for two orders. Unlike the mutual modification of a contract, a waiver is

7

"unilateral in character . . . and can be established by a certain course of conduct." *Kothari v. Tessfaye*, 318 Ga. App. 289, 298-299 (2) (733 SE2d 815) (2012) (citation and punctuation omitted). See also *Mail & Media v. Rotenberry*, 213 Ga. App. 826, 831-832 (446 SE2d 517) (1994) (waiver is a unilateral action relinquishing a known right). Because the court did not deny summary judgment to J & S based on a finding of waiver, this argument is without merit.

3. *Grant of summary judgment*

J & S contends that the trial court erred in granting summary judgment to Uniquechem. We disagree.

A plaintiff moving for summary judgment "must make a prima facie showing that no material issues of fact exist and that [it] is entitled to judgment as a matter of law before the burden shifts to the defendant to establish a possible defense." *Brown v. Service Credit Union*, ____ Ga. App. ____ (1) (Case No. A25A2032, decided December 19, 2025) (citation and punctuation omitted). Here, Uniquechem made a prima facie showing that it was entitled to summary judgment by establishing from the evidence that the parties modified the purchase price, that J & S accepted delivery of the goods pursuant to that modified price, and that J & S then refused to pay the

8

amounts owed. See *UWork.com v. Paragon Techs.*, 321 Ga. App. 584, 590 (1) (740 SE2d 887) (2013) (a breach of contract occurs if a contracting party repudiates or renounces liability under the contract). "[T]he burden of production then shifted to [J & S] to produce or point to evidence in the record establishing an affirmative defense." *Thomas v. Summers*, 329 Ga. App. 250, 253 (1) (764 SE2d 578) (2014)

(a) *Previous arguments*

J & S first attempts to meet this burden by referencing the same arguments previously rejected in Division 2. Because those arguments, as explained above, are without merit, they fail to create any genuine issue of material fact or otherwise establish a viable defense to Uniquechem's prima facie showing of a breach of contract.

(b) *Signature on revised purchase orders*

J & S further claims that the grant of summary judgment to Uniquechem was erroneous because there is a question of fact as to whether Smith signed the revised purchase orders. J & S cites three pages of Smith's deposition testimony and two paragraphs of his affidavit, but J & S fails to make any arguments concerning specific testimony by Smith purportedly showing a triable issue. Nevertheless, we have

reviewed the cited evidence and find no genuine issue of material fact as to Smith's

electronic signatures. See OCGA § 10-12-2 (8) ("'Electronic signature' means an

electronic sound, symbol, or process attached to or logically associated with a record

and executed or adopted by a person with the intent to sign the record."); *State of Ga.*

*v. Fed. Def. Program*, 315 Ga. 319, 334-336 (3) (c) (882 SE2d 257) (2022) (typed name

at bottom of email constitutes an electronic signature).

(i) *Deposition*

On the cited pages of Smith's deposition testimony, Smith admitted that the

revised purchase orders bore his typed approvals and signatures, that he knew the

revised purchase orders were sent to Uniquechem, and that he never told Canfield

that the approvals and signatures were not his. He claimed that his approvals and

signatures were computer generated and could be put on the purchase orders by

anyone, but he did not deny authorizing them because he could not remember if he

had done so. Such equivocal testimony was insufficient "to raise a genuine issue of

fact as to whether he had signed the [revised purchase orders]." *Hogan v. Pearson*, 190

Ga. App. 787, 788 (2) (380 SE2d 82) (1989) (where defendant did not deny signing

document but merely gave "equivocal testimony" that "the signature did not look like

his and he could not remember signing it"). See also *Thomas*, supra at 252-253 (1) (defendant's equivocal testimony about not recalling signature on note was insufficient to create issue of fact on summary judgment); *Burke County Dialysis Ctr. v. Walters*, 194 Ga. App. 535, 536 (391 SE2d 33) (1990) (no dispute of fact created regarding defendant's signature on note and guarantee by his testimony that he did not remember signing and did not believe he had signed).

(ii) *Affidavit*

Smith does not deny in either of the cited paragraphs of his affidavit that he signed the revised purchase orders. Rather, in one paragraph, he merely stated that "the parties did not amend, supplement, or modify the Purchase Agreement in a signed writing or otherwise." Such a broad conclusory statement, which does not address the specific evidence showing Smith's signatures on the revised purchase orders, is insufficient to create a genuine issue of material fact. See *Smith v. Jones*, 278 Ga. 661, 662 (2) (604 SE2d 187) (2004) (conclusory affidavit failed to create any genuine issue of material fact); *Sherrill v. Stockel*, 252 Ga. App. 276, 278 (557 SE2d 8) (2001) (self-serving, conclusory affidavit unsupported by fact or circumstance is insufficient to raise a genuine issue of material fact).

In the other paragraph, Smith merely stated that J & S never signed a waiver of rights. But as discussed above in Division 2 (b), this case does not involve any finding of waiver in the court's summary judgment order. Such immaterial testimony does not give rise to a triable issue.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*